## BRIDGEMAN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   October 2, 1905.)

No. 1,179.

1. UNITED STATES—PRESENTING FALSE CLAIM—ELEMENTS OF OFFENSE.

Under the statutory provisions and the rules and regulations of the Indian Department, which require all accounts and vouchers for claims and disbursements connected with Indian affairs to be transmitted to the Commissioner of Indian Affairs for administrative examination, approval, and allowance, or correction or rejection, and to be by him passed to the proper accounting officer of the Treasury Department for settlement, such Commissioner is an officer required to pass upon, and, if found correct, to approve and allow, the accounts and vouchers of Indian agents, who have authority to make purchases and disbursements, and the transmission to the Commissioner by such an agent of a false and fraudulent voucher for disbursements claimed to have been made, and for which he claims credit in his quarterly account, knowing such voucher to be false, constitutes the presenting of a false claim against the United States, which is made a criminal offense by Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674].

2. SAME—INDICTMENT.

An indictment, under Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674], for presenting a false claim against the United States, which charges that defendant, as Indian agent, transmitted to the Commissioner of Indian Affairs, with his accounts, a false voucher purporting to be a receipt for money paid out by him, knowing that the same was false and fictitious, in that he had not paid such money, sufficiently alleges wherein the claim was false to apprise the defendant of what he is required to meet.

3. SAME.

An indictment which charges a willful attempt by defendant to obtain money from the United States by presenting a false, fictitious, and fraudulent claim, the false, fictitious, and fraudulent character of which was known to him, necessarily imports an intent to defraud the government, and such intent need not be specifically alleged.

4. SAME.

An indictment for presenting a false claim or voucher against the United States sufficiently describes such claim or voucher, where it sets out the substance of the same with such particularity as to make any judgment in the case a bar to any subsequent prosecution for the same offense.

5. SAME.

An indictment for making a false voucher for the purpose of obtaining payment of a false and fraudulent claim against the United States sufficiently alleges the place of the crime, where it charges that it was committed at a certain Indian agency named, which is alleged to have been within the state and district where the indictment was found.

6. INDICTMENT—DUPLICITY.

An indictment under Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674], is not bad for duplicity because it charges in the same count both the making and the presenting of a false claim against the United States; the gist of the offense being the obtaining, or attempting to obtain, money from the United States by means of a fraudulent claim, and the acts charged being but different steps in the commission of such offense, although either alone is made punishable.

7. UNITED STATES—PRESENTING FALSE CLAIM—INDICTMENT.

A count in an indictment under Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674], charging the use of a false voucher for the purpose of obtaining the approval of a claim against the United States, is not bad because it

140 F.—37

does not aver in express words that the claim itself was false and fraudulent, where it shows that the voucher is the same described in a preceding count as constituting the claim, and, which is there alleged to have been false and fraudulent to defendant's knowledge.

8. SAME.

An indictment under Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674], which charges that defendant, for the purpose of obtaining the approval of a certain claim against the United States, did use a certain false voucher, described, which contained false and fictitious statements, well knowing the same to be false and fictitious, charges every element of the offense as defined in the statute, and need not allege to whom the voucher was presented, nor the manner of its use.

9. SAME—EVIDENCE.

On the trial of a defendant charged with having, as Indian agent, made and presented a false claim and voucher against the United States, knowing the same to be false and fictitious, testimony that it was a custom or practice of other Indian agents to sign and forward their accounts and vouchers as the same were prepared by the clerks, without reading them, was irrelevant, and properly excluded.

10. SAME—VARIANCE.

An allegation in an indictment for making and presenting a false claim against the United States of the date when the same was made and presented is not an essential part of the description of the offense, and the fact that the paper introduced in support of the charge bears a different date does not constitute a fatal variance.

11. CRIMINAL LAW—OFFENSE AGAINST UNITED STATES—VENUE OF PROSECUTION.

Under Rev. St. § 731 [U. S. Comp. St. 1901, p. 585], which provides that offenses begun in one judicial circuit and completed in another may be prosecuted in either, where a false claim and voucher against the United States are made in one state and transmitted from there to the appropriate department in the city of Washington for approval and allowance, the offense of presenting the false claim may be prosecuted in the state where the papers were made.

In Error to the District Court of the United States for the District of Montana.

The plaintiff in error was charged by indictment with the violation of the provisions of section 5438 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3674], which, so far as applicable to this case, are as follows:

"Sec. 5438. Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * every person so offending in any of the matters set forth in this section shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars."

The indictment contained 38 counts, under the twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, and thirty-second of which the plaintiff in error was found guilty.

The twenty-first count is in these words: "And the grand jurors aforesaid, upon their oaths and affirmations aforesaid, do further find, charge, and present: That one Morris L. Bridgeman, late of the state and district of Montana, before and on the 5th day of October, A. D. 1901, and thenceforth until and on and after the 31st day of January, A. D. 1902, was then and there the United

States Indian agent at and of the Fort Belknap Indian reservation, in the state and district of Montana. That on the said 31st day of January, A. D. 1902, in the state and district of Montana, the said Morris L. Bridgeman, United States Indian agent as aforesaid, did then and there knowingly, willfully, and unlawfully make and cause to be made, and present and cause to be presented, for approval, to the Commissioner of Indian Affairs of the United States, being then and there an officer of the civil service of the United States, a false, fictitious, and fraudulent claim upon and against the government of the United States for the sum of two-hundred and eighty-five dollars and eighty-eight cents; that is to say, a certain claim purporting that the said Morris L. Bridgeman, as United States Indian agent as aforesaid, had then and there expended and paid the said sum of two hundred and eighty-five dollars and eighty-eight cents to two certain Indians, to wit, Turns Around and Bracelet, in payment of fourteen thousand two hundred and ninety-four feet of rough lumber, and that the said aggregate sum of two hundred and eighty-five dollars and eighty-eight cents had been so expended and paid by said Morris L. Bridgeman, as United States Indian agent, as aforesaid, by paying to said Indian, Turns Around, the sum of eighty-five dollars and eighty-eight cents for four thousand two hundred and ninety-four feet of rough lumber, and by paying to said Indian, Bracelet, the sum of two hundred dollars for ten thousand feet of rough lumber. That the said claim was then and there, to wit, at the time of the making and presenting thereof as aforesaid, false, fictitious, and fraudulent in this: that the said Morris L. Bridgeman, United States Indian agent as aforesaid, had not paid the said sum of two hundred and eighty-five dollars and eighty-eight cents to said Indians, Turns Around and Bracelet, or either of them, in payment of fourteen thousand two hundred and ninety-four feet of rough lumber, and had not paid to said Indian, Turns Around, the sum of eighty-five dollars and eighty-eight cents for four thousand two hundred and ninety-four feet of rough lumber, and had not paid to said Indian, Bracelet, the sum of two hundred dollars for ten thousand feet of rough lumber; and that the said Morris L. Bridgeman, United States Indian agent, as aforesaid, was not then and there entitled to have the said claim, so made and presented by him as aforesaid, approved, he, the said Morris L. Bridgeman, United States Indian agent as aforesaid, at the time of so making and presenting the said claim, then and there well knowing the same to be false, fictitious, and fraudulent. And so the grand jurors aforesaid, upon their oaths and affirmations aforesaid, do say that the said Morris L. Bridgeman, United States Indian agent as aforesaid, in the state and district of Montana, and in manner and form aforesaid, did on the 31st day of January, A. D. 1902, make and cause to be made, and present and cause to be presented, for approval to the said Commissioner of Indian Affairs of the United States a claim upon and against the government of the United States, which said claim he, the said Morris L. Bridgeman, then and there well knew to be false, fictitious, and fraudulent, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America." The other odd-numbered counts under which the plaintiff in error was found guilty were the same, except as to amounts, names, and dates.

The twenty-second count is in the following words and figures: "And the grand jurors aforesaid, upon their oaths and affirmations aforesaid, do further find, charge, and present: That one Morris L. Bridgeman, late of the state and district of Montana, before and on the 31st day of January, A. D. 1902, was then and there the United States Indian agent at and of the Fort Belknap Indian reservation, in the state and district of Montana. That on the said 31st day of January, A. D. 1902, in the state and district of Montana, and within the jurisdiction of this court, the said Morris L. Bridgeman, United States Indian agent as aforesaid, for the purpose of obtaining the approval of a certain claim upon and against the government of the United States for the sum of two hundred and eighty-five dollars and eighty-eight cents, alleged to have been paid by the said Morris L. Bridgeman, as United States Indian agent as aforesaid, to two certain Indians, to wit, Turns Around and Bracelet, in payment of fourteen thousand two hundred and ninety-four feet of rough lumber, by paying to said Indian, Turns Around, the sum of eighty-

five dollars and eighty-eight cents for four thousand two hundred and ninety-four feet of rough lumber, and by paying to said Indian, Bracelet, the sum of two hundred dollars for ten thousand feet of rough lumber, did then and there knowingly, willfully, and unlawfully use and cause to be used a certain false voucher, the said voucher being designated on the face thereof as "Voucher for Open-Market Purchases from Indians," which said voucher contained the false, fraudulent, and fictitious statements and entries that on the said 5th day of October, A. D. 1901, there was paid by the said Morris L. Bridgeman, as United States Indian agent as aforesaid, to said Indian, Turns Around, the sum of eighty-five dollars and eighty-eight cents for four thousand two hundred and ninety-four feet of rough lumber, and to said Indian, Bracelet, the sum of two hundred dollars for ten thousand feet of rough lumber, which said statements and entries, so contained in said voucher, as aforesaid, were, and each of them was, then and there, false, fraudulent, and fictitious in this: that there was not paid on the 5th day of October, A. D. 1901, or at any time, to said Indian, Turns Around, the sum of eighty-five dollars and eighty-eight cents for four thousand two hundred and ninety-four feet of rough lumber, and that there was not paid on the said 5th day of October, A. D. 1901, or at any time, to said Indian, Bracelet, the sum of two hundred dollars for ten thousand feet of rough lumber; he, the said Morris L. Bridgeman, United States Indian agent as aforesaid, then and there well knowing that the said voucher was false, and then and there well knew that the said voucher contained each and every of the said false, fraudulent, and fictitious statements and entries as aforesaid. And so the grand jurors aforesaid, upon their oaths and affirmations aforesaid, do say that the said Morris L. Bridgeman, at the time and in the manner and form as in this count aforesaid, for the purpose of obtaining the approval of a claim upon and against the government of the United States, knowingly, willfully, and unlawfully did use and cause to be used a false voucher, knowing the same to contain false, fraudulent, and fictitious statements and entries, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America." The other even-numbered counts under which the plaintiff in error was convicted are the same, except as to amounts, names, and dates.

The plaintiff in error challenged the sufficiency of the counts mentioned by demurrer upon various grounds, and after his conviction moved in arrest of judgment upon similar grounds, all of which actions on his part were overruled by the court below, to which rulings he excepted.

The bill of exceptions recites that upon the trial the government offered in evidence in support of counts 21 and 22 of the indictment a duly authenticated copy of a paper and voucher marked upon the face thereof "Voucher for Open-Market Purchases from Indians," which voucher is in the following words and figures:

"'5,342.

"'Voucher for Open-Market Purchases from Indians.

"'We, the undersigned, Indians of the Fort Belknap Agency, Montana, do hereby acknowledge to have received this 5th day of October, 1901, from M. L. Bridgeman, U. S. Indian Agent, the sums of money set opposite our respective names, in full payment for the amounts due us for rough lumber at the rate of $20.00 per 1000 feet, delivered during the first quarter, 1902, at Fort Belknap Agency, for the purpose as specified in this voucher:

| Date. | | | No. of feet. | Amount due and paid each. | Signatures. | | |
|---|---|---|---|---|---|---|---|
| 1901. | No. | Names. | | Dols. Cts. | | Marks. | Witnesses. |
| Oct. 5. | 1 | Turns Around | 4,294 | 85 55 | Turns Around | X | J. C. Fitzpatrick. J. M. Johnson. |
| | 2 | Bracelet | 10,000 | 200 00 | Bracelet | X | J. C. Fitzpatrick. J. M. Johnson. |
| Total | | | 14,294 | 285 88 | | | |

"' I certify on honor that I have explained to these Indians, and am satisfied they understand, the nature of this pay roll, and that I witnessed the

payment of the several amounts set forth to the individuals numbered from 1 to 2, inclusive, and the signing by each in receipt thereof.

" 'Edmund First Smoke, Interpreter.

" 'Fort Belknap Agency, Montana, Oct. 5, 1901.

" 'We, the undersigned, certify on honor that we were present and witnessed the payment of the several sums set forth to the Indians numbered on the pay roll from 1 to 2, inclusive, and the signing by each in receipt thereof; and we further declare our entire disinterestedness in the matter.

" 'J. C. Fitzpatrick,
" 'J. M. Johnson,
" 'Witnesses.

" 'I, M. L. Bridgeman, U. S. Indian Agent, hereby certify on honor that on the 5th day of October, 1901, I made payment of the several sums to the Indians, who have receipted therefor; that said pay roll contains the names of 2 persons, numbered from 1 to 2, inclusive; that the aggregate amount of said payments was two hundred eighty-five and 88-100 ($285.88) dollars; that the purchase was made under authority from the Office of Indian Affairs, dated September 15, 1898, renewed, copy attached hereto, and that the price paid is reasonable and the lowest obtainable; that the above account is correct and just; that the articles named therein were required for immediate use in constructing irrigating system No. 2, and that the same appear on my return of property for the first quarter, 1902.

" 'M. L. Bridgeman, Indian Agent.

" 'Fort Belknap Agency, Mont., Oct. 5, 1901.'

"Whereupon the defendant objected to the introduction of said voucher in support of count numbered 21, for the reason that said count alleged that the claim described therein was made and presented to the Commissioner of Indian Affairs on the 31st day of January, 1902, whereas the said voucher offered in evidence was dated October 5th, 1901, and there was, therefore, a fatal variance between the allegations of the count and the proof offered. Which said objection was overruled by the court, and said voucher admitted in evidence, to which ruling the defendant then and there excepted, which said exception was then and there noted and reduced to writing, and was by the court allowed. That said voucher was a voucher of the quarterly accounts of the defendant, Morris L. Bridgeman, rendered by said defendant as United States Indian agent of the Ft. Belknap Agency to the Commissioner of Indian Affairs for the second quarter of the fiscal year 1902, ending on December 31, 1901, and was the only written paper, account, or claim of any kind or character which was introduced in evidence in support of said counts numbered 21 and 22, and was duly certified to by the Commissioner of Indian Affairs as being a voucher of the quarterly account for the second quarter of the fiscal year, 1902, ending on December 31st, 1901, of the defendant, Morris L. Bridgeman, as United States Indian agent of the Ft. Belknap Agency, and as being on file in the said office of the Commissioner of Indian Affairs. That on the trial of this cause the testimony tended to establish that said voucher was in the handwriting of the agency clerks at said Ft. Belknap Agency in the district of Montana, and that it was there signed by the defendant in this cause, and that the defendant knew its contents, and knew that the statements contained therein were false, fictitious, and fraudulent, and was forwarded by U. S. Mail with the quarterly accounts to the Commissioner of Indian Affairs at Washington, D. C. That the said testimony and the said certificate of the Commissioner of Indian Affairs showing that the said voucher was and is on file in his office was and is the only evidence and testimony introduced in this cause showing or tending to show where said voucher was made and presented to the Commissioner of Indian Affairs for payment or approval, or where said voucher was used by the defendant for the purpose of obtaining or aiding to obtain the payment or approval of the claim set out and described in said counts 21 and 22 of said indictment and in support of which said voucher was introduced in evidence. That there was no testimony, other than the said certificate of the Commissioner of Indian Affairs and the evidence hereinbefore set out, showing that the said defendant had made or caused to be made, or presented or caused to be presented, said voucher to the Commissioner of Indian Affairs, or where he had made or

caused to be made, or presented or caused to be presented, or used or caused to be used, the said voucher."

Similar proceedings were had under the other counts upon which the plaintiff in error was convicted, which it is unnecessary to detail.

The bill of exceptions further recites that the defendant having testified, among other things, that he did not read the vouchers and claims so introduced in evidence when he signed them, and that he did not know that they contained any false or untrue statements, called as a witness one Zebaugh, a civil service clerk in the Indian service stationed at Ft. Belknap Agency, Mont., and acting as chief clerk at that place, and having examined that witness in relation to his service in different agencies as civil service clerk, and having shown that he was familiar with the course of business at the various Indian agencies where he had worked, but that he did not know of the custom or practice employed at the Ft. Belknap agency during the defendant's incumbency, because he had not been there during such incumbency, asked the witness "if it was usual or customary for Indian agents, at agencies other than Belknap Agency, where he had been employed, to read over the voucher, claims, or reports prepared by the civil service employés for the purpose of forwarding and presentation to the Commissioner of Indian Affairs before signing them. Whereupon the government objected to said question as immaterial, irrelevant, and incompetent, and the court sustained the objection. Whereupon the defendant offered to prove by said witness that in the usual course of business in the Indian agencies where he had been employed as civil service clerk it was not usual or customary for the Indian agents to read over the cash vouchers, claims, and reports made and presented to the Commissioner of Indian Affairs before signing them, or before transmitting them to the department, for the purpose of showing that the defendant had signed the vouchers introduced in evidence in the usual course of business, and in the manner and way usually employed in the Indian service, and for the purpose of showing that the defendant had acted in good faith, and for any other purpose for which said testimony might be competent and material. Whereupon the government objected to the introduction of said testimony as irrelevant, immaterial, and incompetent, which objection was sustained by the court," and to which ruling the defendant reserved an exception.

Upon the conclusion of the government's case, the defendant requested the court to direct a verdict for the defendant upon various grounds, which motion was denied, and to which ruling the defendant reserved an exception. The assignments of error are numerous and cover the points argued by counsel.

Rodgers & Rodgers, for plaintiff in error.

Edward E. Cushman, Special Asst. Atty. Gen., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is first contended on behalf of the plaintiff in error that it is essential to the validity of the indictment in question that it charge, either by direct averment or by stating such facts that when the law is applied to them it directly and clearly appears therefrom, that the claim or voucher, as the case may be, is such that the officer to whom it is alleged it was presented was authorized to approve or allow. Conceding that, we are of the opinion that the indictment in question meets the requirement. It is provided by section 463 of the Revised Statutes [U. S. Comp. St. 1901, p. 262] that:

"The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs, and of all matters arising out of Indian relations."

By succeeding sections of the same chapter of the Revised Statutes it is provided that all accounts and vouchers for claims and disbursements connected with Indian affairs shall be transmitted to the Commissioner for administrative examination, and by him passed to the proper accounting officer of the Department of the Treasury for settlement; that the President may prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs, and for the settlement of the accounts of Indian affairs; that the Secretary of the Interior shall prepare and cause to be published such regulations as he may deem proper, prescribing the manner of presenting claims arising under laws or treaty stipulations, for compensation for depredations committed by the Indians, and the degree and character of the evidence necessary to support such claims; that the Commissioner of Indian Affairs shall annually report separately to Congress a tabular statement showing distinctly the separate objects of expenditure under his supervision, and how much disbursed for each object, describing the articles and the quantity of each, and giving the name of each person to whom any part was paid, and how much was paid to him, and for what object, so far as they relate to the disbursement of the funds appropriated for the incidental, contingent, or miscellaneous expenses of the Indian service during the fiscal year next preceding each report.

By section 2058 of the Revised Statutes it is provided that:

"Each Indian Agent shall within his Agency manage and superintend the intercourse with the Indians, agreeably to law; and execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the President, the Secretary of the Interior, the Commissioner of Indian Affairs, or the Superintendent of Indian Affairs."

And section 2091 of the Revised Statutes declares that:

"All persons whatsoever, charged or trusted with the disbursement or application of money, goods, or effects of any kind for the benefit of the Indians, shall settle their accounts, annually, at the Department of the Interior on the first day of October; and copies of the same shall be laid before Congress at the commencement of the ensuing session, by the proper accounting officers; together with a list of the names of all persons to whom money, goods, or effects have been delivered within the preceding year, for the benefit of the Indians, specifying the amount and object for which they were intended, and showing who are delinquents, if any, in forwarding their accounts according to the provisions of this section; and, also, with a list of the names of all persons appointed or employed under this Title, with the dates of their appointment or employment, and the salary and pay of each."

Section 4 of an act approved August 30, 1890 (26 Stat. 413, c. 837, 1 Supp. Rev. St. 794 [U. S. Comp. St. 1901, p. 2417]), is as follows:

"That hereafter all disbursing officers of the United States shall render their accounts quarterly; and the Secretary of the Senate shall render his accounts as heretofore; but the Secretary of the Treasury may direct any or all such accounts to be rendered more frequently, when in his judgment the public interests may require."

Counsel are agreed that the rules and regulations of the Indian Department promulgated under the authority of law have the force and effect of statutes, and that the court will take judicial notice of them. Sections 61, 62, 63, 265, 268, and 269, of the Regulations of the Indian Office of 1894, provide as follows:

"Sec. 61. Special authority of the Secretary of the Interior must be obtained for purchases of any kind, and before purchase is made, except in cases of special exigency, when the absolute necessities of the service will not admit of the delay incident to securing such authority. In such cases purchases may be made by agents before authority is obtained, but only to the extent of relieving the immediate necessity.

"Sec. 62. Agents are not the sole judges of the exigency spoken of in the preceding section, but a full report of the facts attending purchases made without authority, accompanied by an itemized list showing articles purchased and prices paid, must be immediately submitted for the consideration of the Indian Office. If agent's purchase is approved, a copy of the letter of approval must be filed in the officer's quarterly account, with the vouchers representing the purchases, as required by section 268, and must accompany certified vouchers if to be paid through the Indian Office.

"Sec. 63. Agents making purchases without previous authority therefor, do so at their own risk. If such purchases do not meet with the approval of the Secretary of the Interior the agent making them will be compelled to make payment therefor out of his own private funds."

"Sec. 265. An account current must be rendered for every quarter, whether any disbursements have been made or funds received during the quarter, or not."

"Sec. 268. All vouchers must be legibly dated, and every certificate, whether on the face or back of any voucher, by whomsoever made, to give it validity must also be dated and signed. A copy of the authority for the expenditure must be attached to the voucher, except when there are two or more expenditures in the same quarter under the same authority, in which case one copy of the authority will be sufficient, reference being made on other vouchers to the one to which said copy is attached.

"Sec. 269. Credits will not be allowed for any expenditure until the same has been authorized by the Secretary of the Interior."

The rules and regulations of the Indian Office also provide that the Indian agents shall forward to that office their quarterly accounts within 30 days from the end of each quarter.

As will have been seen from the statutory provisions above referred to, all accounts and vouchers for claims and disbursements connected with Indian affairs are required to be transmitted to the Commissioner for administrative examination; that is to say, for approval and allowance when correct, and for correction or rejection when incorrect, and by him passed to the proper accounting officer of the Department of the Treasury for settlement. From these provisions the conclusion is irresistible that the Commissioner is by law authorized and required to pass upon the accounts and vouchers of the various agents, which are required by statute to include "all accounts and vouchers for claims and disbursements connected with Indian Affairs." There is, therefore, no ground for the contention of counsel for the plaintiff in error that, applying the law to the facts alleged in the indictment, it does not appear that the Commissioner of Indian Affairs was authorized to approve or allow the claims and vouchers alleged to have been presented to him by the plaintiff in error. It is alleged in substance that the claims were made and presented by the defendant to the Commissioner; that they represented that the defendant, as United States Indian agent of the Ft. Belknap Indian reservation, in Montana, paid certain stated sums of money to certain named Indians for certain specified quantities of rough lumber, for which he made claim against the government, supporting such claims by the vouchers specifically described, all of which claims and vouchers the indictment, in its various counts,

alleges were false, fictitious, and fraudulent, and so known to be by the defendant, he, according to the averments, not having in fact made such expenditures. It is perfectly clear that demands for money made upon the government by its Indian agents for expenditures pretended to have been made by them as such agents are required, both by the above-cited provisions of the statute, as well as by the rules and regulations of the Indian Office, to be presented to the Commissioner of Indian Affairs for his action; and it is equally clear, we think, that that officer is fully authorized to approve and allow them if found correct, and to pass them on to the proper accounting officer of the Treasury Department for settlement. If such claims and the vouchers supporting them be in fact false, fictitious, and fraudulent, and are known to be so by the person making or presenting them, they are denounced by the statute upon which the present indictment is founded, and clearly come within its provisions.

It is next contended on the part of the plaintiff in error that the assignments of falsity contained in the indictment are insufficient. Section 8 of the act of Congress of July 4, 1884 (23 Stat. 97, c. 180), provides:

"That any disbursing or other officer of the United States, or other person, who shall knowingly present, or cause to be presented, any voucher, account, or claim to any officer of the United States, for approval or payment, or for the purpose of securing a credit in any account with the United States, relating to any matter pertaining to the Indian service, which shall contain any material misrepresentation of fact in regard to the amount due or paid, the name or character of the article furnished or received, or of the service rendered, or to the date of purchase, delivery, or performance of service, or in any other particular, shall not be entitled to payment or credit for any part of said voucher, account, or claim; and if any such credit shall be given or received, or payment made, the United States may recharge the same to the officer or person receiving the credit or payment, and recover the amount from either or from both, in the same manner as other debts due the United States are collected: Provided, that where an account contains more than one voucher the foregoing shall apply only to such vouchers as contain the misrepresentation: And provided further, that the officers and persons by and between whom the business is transacted shall in all civil actions in settlement of accounts, be presumed to know the facts in relation to the matter set forth in the voucher, account, or claim: And provided further, that the foregoing shall be in addition to the penalties now prescribed by law, and in no way affect proceedings under existing law for like offenses. That where practicable this section shall be printed on the blank forms of vouchers provided for general use."

The rules and regulations of the Indian Office also require the vouchers to contain an accurate and correct statement of the amount expended and the purpose or object for which expended. Rules of 1894, Nos. 251, 252, 253, 267, 270, 271, 272, and 275.

The counts of the indictment relating to the making and presentation of the claims in question not only allege in general terms that they were, at the time of the making and presenting of them, well known to the defendant to be false, fictitious, and fraudulent, but specifically allege that they were false, fictitious, and fraudulent in that the defendant had not paid the money claimed to have been paid by him to the respective Indians for the specified lumber, and that the defendant was not, at the time of making and presenting the respective claims, en-

titled to have the same approved; he then and there well knowing the claims to be false, fictitious, and fraudulent. Nothing more was needed to apprise him of what he must be prepared to meet in respect to the alleged falsity of the claims. "The true test of the sufficiency of an indictment," said this court in the case of Peters v. United States, 94 Fed. 127, 131, 36 C. C. A. 105, "is not whether it might possibly have been made more certain, but whether it contains every. element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Under a statute declaring that if any person "shall transmit to or present at, or cause or procure to be transmitted to or presented at any office or officer of the government of the United States any deed, power of attorney, order, certificate, receipt, or other writing in support of or in relation to any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, every such person shall be deemed and adjudged guilty of felony," etc., the Supreme Court held in the case of United States v. Staats, 8 How. 41, 45, 12 L. Ed. 979, that:

"The transmission or presentation of any deed or other writing to any office or officer of the government in support of or in relation to any account or claim, with the intent to defraud the United States, knowing the same to be false, are the only essential ingredients."

It is a sufficient answer to the suggestion that there is no direct allegation of an intent to defraud the government to say that a willful attempt on the part of any person to obtain money from the government, based upon a false, fictitious, and fraudulent claim, the false and fraudulent character of which is known to him, necessarily imports an intent to defraud the government. The assignments of falsity in relation to the use of the vouchers are similar, and also sufficient.

It is further contended on the part of the plaintiff in error that the claims and vouchers should have been set out in hæc verba, or, at least, that the indictment should have set forth the substance of their contents and affirmatively alleged that the substance of the papers was thus stated. That it is enough for the indictment to allege the substance of the fraudulent claims and vouchers or papers used in support of them, and in such a way as to make any judgment based upon it a bar to any subsequent prosecution for the same offense, is sufficiently shown by the case of Ingraham v. United States, 155 U. S. 434, 15 Sup. Ct. 148, 39 L. Ed. 213. We think that was done in the case in hand.

It is also said for the plaintiff in error that the indictment is insufficient, in that it does not allege the particular place in the state and district of Montana where the crime charged is alleged to have been committed. Since the jurisdiction of the trial court is coextensive with the district, it is conceded that the allegation in respect to place is sufficient for the purpose of fixing the venue; but it is contended that it does not describe the crime charged with sufficient certainty in

respect to place for the information of the defendant. We think the case of Ledbetter v. United States, 170 U. S. 613, 18 Sup. Ct. 774, 42 L. Ed. 1162, is authority to the contrary.

Next it is contended for the plaintiff in error that the odd-numbered counts in question are defective for duplicity in charging a making and presenting of the alleged fraudulent claims. The case of Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, involved, among other things, the validity of an indictment founded upon Section 5421, Rev. St. [U. S. Comp. St. 1901, p. 3667], which provides that:

"Every person who falsely makes, alters, forges, or counterfeits; or causes or procures to be falsely made, altered, forged, or counterfeited; or who aids or assists in .the false making, altering, forging, or counterfeiting, any deed, power of attorney, order, certificate, receipt or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly to obtain or receive, from the United States or any of their officers or agents, any sum of money; or who utters or publishes as true, or causes to be uttered or published as true, any such false, forged, altered or counterfeited deed, power of attorney, order, certificate, receipt, or, other writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or who transmits to, or presents at, or causes or procures to be transmitted to or presented at any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, or other writing, in support of or in, relation to any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, shall be imprisoned at hard labor for a period of not less than one year, nor more than ten years, or shall be imprisoned not more than five years, and fined not more than one thousand dollars."

The second count in the indictment there charged:

"That heretofore, to wit, on the 4th day of August, A. D. 1892, one Spahiga is alleged to have executed a certain declaration and affidavit. Said declaration and affidavit are in words and figures as set out in the first count of this indictment, and said declaration and affidavit purporting to be executed before one A. W. Crain, United States commissioner in the Creek Nation in the Indian Territory, the said Spahiga claiming in said declaration a pension from the United States as soldier of War of Rebellion, who in said declaration was alleged to have enlisted under the name of Spahiga, at ——, on the 12th day of August, 1863, Company D, First Regiment, Indian Home Guards, Indian Territory, in the War of the Rebellion. Said declaration and affidavit, after being so made, executed, and falsely counterfeited and forged by said Alex. W. Crain, was by said Alex. W. Crain forwarded, with intent to defraud the United States and to obtain certain moneys from the United States, to the office of the Commissioner of Pensions, in the Department of the Interior, at the city of Washington, in the District of Columbia, where the same was duly filed on the 12th day of August, 1892, as a claim against the government of the United States for a pension by the said Spahiga, as soldier aforesaid, as aforesaid, and being so filed for approval by the said A. W. Crain, in the office aforesaid, by the Commissioner of Pensions, and the said affidavit and declaration being material on the question pending before said Commissioner of Pensions as to whether the said Spahiga was by the laws of the United States entitled to a pension. And the jurors aforesaid, upon their oaths aforesaid, do further present that on the 4th day of August, 1892, at the Creek Nation, Indian Territory, and within the Western district of Arkansas, at which date said declaration, affidavit, and claims were prepared and made for filing in the office of the Commissioner of Pensions as aforesaid, the same being an office of the United States, for the purpose aforesaid, one Alex. W. Crain did make, execute, and forge, and cause to be made, executed, and forged, a certain pretended and false affidavit, or the same may be called a certificate, the same being one and the same paper, and being in form and

substance as hereinafter set out, which said forged, false, and counterfeited affidavit or certificate was fraudulent, and was a part of the said declaration and affidavit above mentioned, and was forwarded, together with the said declaration, to the office of the Commissioner of Pensions aforesaid, for the purpose of defrauding the United States and of aiding and abetting the said Spahiga to obtain the approval of the said Commissioner of Pensions to his said claim for a pension as aforesaid, for the purpose of aiding the said Spahiga fraudulently to obtain money from the United States, which said pretended and false affidavit and certificate is in substance set out in the first count of this indictment. The said pretended affidavit and certificate and declaration were forged, false, and fraudulent, and did contain fraudulent and fictitious statements, as the said A. W. Crain well knew, in this: That Pahose. Marrell, Spahiga, and Nokos Fixico did not sign said pretended affidavit and certificate, declaration, and affidavit, as set forth in said false certificate and affidavit, and said Pahose Marrell, Spahiga, and said Nokos Fixico were not sworn as to the truth of the matters and things set forth in said pretended declaration, affidavit, and certificate; but in truth and fact the said A. W. Crain did knowingly and willfully, feloniously, and falsely make, counterfeit, forge, and cause to be made, counterfeited, and forged,. the names of Pahose Marrell, Spahiga, and Nokos Fixico to and upon the said false and forged affidavit and certificate, with intent to defraud the United States and to aid the said Spahiga in obtaining money fraudulently from the United States, and that the said A. W. Crain did not swear the said Pahose Marrell, said Spahiga, and the said Nokos Fixico as to the truth of the matters and things set forth in said declaration, affidavit, and certificate, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

In considering and disposing of the objection to that count that it charged three separate distinct offenses, and was therefore materially defective within the rule that two offenses cannot be charged in the same count, the Supreme Court said:

"Undoubtedly the section of the Revised Statutes under which the indictment was framed embraces several distinct acts, the doing of either of which is punishable. It is prohibited either to falsely make, alter, forge, or counterfeit, or to cause to be falsely made, altered, forged, or counterfeited, any deed, power of attorney, order, certificate, receipt, or other writing for. the purpose of obtaining, recovering, or enabling any other person, either directly or indirectly, to obtain or receive, from the United States any sum of money. It is also prohibited to any person to transmit or present at, or cause or procure to be transmitted to or presented at, any office, or to any officer of the government, any deed, power of attorney, order, certificate, receipt, or other writing, in support of or in relation to any account or claim with the intent .to defraud the United States, knowing the same to be false, altered, forged, or counterfeited. The second count charged, in substance, not only that the defendant did things, and each of them, the doing of which, or either of which, the statute prohibited, but also that he caused the doing of such things and of each of them. Was the count, thus drawn, so defective as to require that judgment upon it be arrested?"

After referring to various cases, the court said:

"We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that Congress intended to reach was the obtaining of money from the United States by means of fraudulent deeds, powers of attorney, orders, certificates, receipts, or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of ·not more than one thousand dollars. We perceive no sound reason why the doing of the prohibited thing, in each ·and all of the prohibited modes,

may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to the charge contained in a single count; for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it."

It is clear, we think, that the making and presenting of a claim for money against the government are but different steps in the same act.

It is further contended for the plaintiff in error that the even-numbered counts in question do not allege that the claims in support of which the alleged false, fictitious, and fraudulent vouchers are alleged to have been used were themselves false, fictitious, or fraudulent. It is true that this is not alleged in so many words, but the even-numbered counts show that the demands against the government specified in the vouchers are the same as those stated in the odd-numbered counts, and are alleged to be false, fictitious, and fraudulent, of all which the defendant is alleged to have been well aware at the time. Moreover, the second clause of the section of the statute upon which the indictment is based, makes it a crime to use in support of any sort of claim against the government a false, fictitious, or fraudulent voucher, bill, receipt, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry.

Another objection urged to the validity of the even-numbered counts is that they do not allege to whom the alleged false, fictitious, and fraudulent vouchers were presented, nor in what manner they were used. It is insisted that averments in respect to those matters were essential in order that the defendant might be apprised of the nature and cause of the accusation against him, and that the court might be able to say whether or not the defendant used the vouchers in such a manner as to effectuate the purpose for which they were used. It is the well-settled rule that the law, except in cases of private statutes and the like, need not be alleged. If the facts alleged are such that, read in connection with the provisions of the statute applicable thereto, they clearly state all the essential elements of the offense, then the indictment is sufficient. United States v. Van Leuven (D. C.) 62 Fed. 62, 67. When that is done the defendant is necessarily apprised of what he is required to meet, and any judgment of acquittal or conviction under such an indictment will, of course, be a bar to any subsequent prosecution for the same offense. That clause of the statute upon which the even-numbered counts in question are based makes it a crime for any person to make or use, or cause to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, for the purpose of obtaining or aiding to obtain the payment or approval of any claim upon or against the government of the United States or any department or officer thereof.

Turning to the twenty-second count in question (the other even-numbered counts being the same, except as to amounts, names, and

dates), it is seen that it charges that the defendant, at a certain time and place within the state and district of Montana, and within the jurisdiction of the court below, for the purpose of obtaining the approval of a certain claim upon and against the government of the United States for the sum of $285.88 alleged to have been paid by him as United States Indian agent of the Ft. Belknap Indian reservation, in Montana, to two certain Indians, to wit, Turns Around and Bracelet, in payment of 14,294 feet of rough lumber, by paying to said Indian, Turns Around, the sum of $85.88 for 4,294 feet of rough lumber, and by paying to said Indian, Bracelet, the sum of $200 for 10,000 feet of rough lumber, did then and there knowingly, willfully, and unlawfully use and cause to be used a certain false voucher, designated on its face as "Voucher for Open-Market Purchases from Indians," which said voucher contained the false, fraudulent, and fictitious statements and entries that on the 5th day of October, 1901, there was paid by the defendant, as United States Indian agent of the Ft. Belknap Indian reservation, to said Indian Turns Around, the sum of $85.88 for 4,294 feet of rough lumber and to the said Indian, Bracelet, the sum of $200 for 10,000 feet of rough lumber, which said statements and entries so contained in said voucher were, and each of them was, then and there false, fraudulent, and fictitious, in that there was not paid, on the 5th day of October, or at any time, to said Indian, Turns Around, the sum of $85.88 for 4,294 feet of rough lumber, and that there was not paid, on said 5th day of October, 1901, or at any time, to said Indian, Bracelet, the sum of $200 for 10,000 feet of rough lumber, he, the defendant, then and there well knowing that the said voucher was false, and that he, the defendant, then and there well knew that the said voucher contained each and every of the said false, fraudulent, and fictitious statements and entries.

These averments contained, in our opinion, every element of the offense defined by the statute upon which the indictment is based, and sufficiently apprised the defendant of what he was required to meet; for the specific acts he is alleged to have committed are set out, the fraudulent purpose and intent with which they are alleged to have been committed is charged, and with knowledge of the law applicable to those acts he, like every one else, is legally chargeable. That the judgment of conviction against him is, like a verdict of acquittal would have been, a bar to any subsequent prosecution for the same offense, is unquestionable.

The court below committed no error in refusing to allow the witness Zebaugh to testify that it was not usual for the Indian agents at other agencies of the government to read over the accounts and vouchers prepared for presentation to the Commissioner of Indian Affairs before signing and forwarding them.

After all of the evidence on the part of the government and of the defendant had been introduced, counsel for the defendant moved the court to direct a verdict of acquittal, on the ground of variance between the date alleged in each of the odd-numbered counts when the claim described therein was made and presented, and the date of the voucher introduced in support thereof, and that there was a "fatal

variance between the allegations of each of said counts and the paper introduced in evidence in support thereof, in that the paper introduced in evidence in support of each count shows upon the face thereof that it is not a claim or demand, but that each of said papers contained the statement that it is a voucher for open-market purchases from Indians, and shows upon its face that it is a series of receipts from certain persons, saying that they have received so much money from the defendant for certain articles sold to the government, and that neither of said vouchers can be construed as the claim described in the count in support of which they were introduced." The court denied the motion, the defendant reserved an exception, and here insists upon such alleged variance.

We think it a sufficient answer to the first objection to say that the date when the alleged claims were made and presented was not an essential part of the description of the offense, but merely a statement of the time when the alleged wrongful act was committed, substantial proof of which only is required. Greenleaf on Evidence, 56.

Equally without merit, in our opinion, is the contention that the vouchers were not claims or demands against the government for money. They were parts and parcels of the quarterly account of the defendant rendered to the government, representing that he had paid out so much money in his official capacity, and used by him in connection with and in support of his claim to be allowed by the government that amount of money.

Lastly, it is contended that the court below had no jurisdiction of the case, for the reason that whatever offense is charged was committed in the District of Columbia, and not in Montana. The answer to this is that the offenses were at least commenced in the state of Montana, and therefore come within the provisions of section 731 of the Revised Statutes [U. S. Comp. St. 1901, p. 585] which is as follows:

"When any offense against the United States is begun in one judicial circuit and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

We have not thought it necessary to review the large number of cases cited by the learned counsel in the case, but have given the points and authorities careful consideration.

Finding no sufficient reason for reversing the judgment, it is affirmed.

NOTE.—The following is the charge to the jury of HUNT, District Judge, in the court below:

"I have observed throughout the trial of this case that you have given very strict attention to the testimony of the many witnesses produced before you, prompted, I believe, by a determination on your part to perform your responsibility by rendering a true verdict according to the evidence. The task of listening patiently to more than a hundred witnesses in one case is by no means an easy one, when it comes to considering the testimony of each and every one with relation to the indictment under which the defendant is tried. And this task is rendered even more difficult than it otherwise might be, because of the fact that over four-fifths of this large number of witnesses have been persons, Indians, whose testimony has been placed before you through interpreters. Now, however, that you are about to take upon your-

selves the final responsibility of deliberating upon and rendering a verdict, in order that you may have an understanding of the law pertinent to the case, I will instruct you as to those principles which are applicable.

"The statute of the United States under which the defendant is indicted reads as follows: 'Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * every person so offending in any of the matters set forth in this section shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand, nor more than five thousand dollars.' [U. S. Comp. St. 1901, p. 3674.]

"The presumption of the law is that defendant Bridgeman is innocent until he is proven to be guilty. This principle that there is a presumption of innocence is axiomatic and elementary law, and its enforcement lies at the foundation of the administration of criminal law. The presumption of innocence is said by the Supreme Court of the United States to be a conclusion drawn by the law in favor of the citizen, by virtue whereof, when brought to trial upon a criminal charge, he must be acquitted unless proven to be guilty. In other words, this presumption is an instrument of proof created by the law in favor of the one accused, whereby his innocence is established until sufficient evidence is introduced to contradict the proof which the law has created and to satisfy you of his guilt beyond a reasonable doubt. This presumption on the one hand, supplemented by any other evidence he may have adduced, and the evidence against him on the other, constitute the evidence from which the legal conclusion of his guilt or innocence is to be drawn. There is another principle which pervades the criminal law, that which relates to the condition of the mind to be produced by the proof resulting from the evidence in the case. I refer to the requirement of the law that you must be satisfied of the guilt of the defendant beyond a reasonable doubt. Definitions of what is a reasonable doubt may sometimes seem fraught with metaphysical distinctions, and may tend sometimes to confuse. But it is proper, and may be helpful to explain to a jury how learned courts have expounded the law in respect to that state of the human mind which should be produced to bring about a reasonable doubt in deliberating in criminal cases. So I give you the law, using the plain language of one of the wisest judges known in our land. It 'is not such a doubt as any man may start by questioning for the sake of a doubt; nor a doubt suggested or surmised without foundation in facts or testimony. It is such a doubt only as in a fair reasonable effort to reach a conclusion upon the evidence, using the mind in the same manner as in other matters of importance, prevents the jury from coming to a conclusion in which their minds rest satisfied. If, so using the mind and considering all the evidence produced, it leads to a conclusion which satisfies the judgment and leaves upon the mind a settled conviction of the truth of the fact, it is the duty of the jury so to declare the fact by the verdict. It is possible always to question any conclusion derived from testimony, but such questioning is not what is a reasonable doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge.'

"I now proceed to summarize in a general way the charges of the indictment against the defendant. There are 39 counts in the indictment; but you will be careful to remember that counts 7, 8, 15, 16, 33, 34, 37, and 39 are entirely withdrawn from your consideration. In the counts, therefore, that you must consider, these are the charges: In each and every one of the counts having odd numbers, excepting those which have been withdrawn from your consideration, the charge is substantially that the defendant as Indian

agent knowingly, willfully, and falsely made and presented for approval to the Commissioner of Indian Affairs at Washington certain false, fictitious and fraudulent claims against the government; that is, claims for money said to have been paid by him as agent to certain persons for wood, lumber, oats, and labor, which never were paid, the defendant well knowing that the claims described in the several counts were false, fictitious, and fraudulent. All of the odd-numbered counts, therefore, are predicated upon the first clause of the first statute which I have read to you. All the counts with the even numbers (excepting, of course, those which are withdrawn entirely from your consideration) charge that the defendant, while Indian agent, for the purpose of obtaining the approval or payment by the government of the certain claims described in the several even-numbered counts, did knowingly, and unlawfully use and cause to be used certain false vouchers, which said vouchers were designated on the face thereof as vouchers for open-market purchases from Indians, which said vouchers contained false, fraudulent, and fictitious statements and entries; that on the respective days specified in the several even-numbered counts there was paid by the defendant, as Indian agent, to the certain persons named therein, the sums specified in the counts for lumber, wood, oats, or labor, which said entries and statements contained in said vouchers were and are false, fictitious, and fraudulent; that there never was paid to the persons named in the vouchers the sums named, or any part of them; and that defendant, as Indian agent, well knew that such vouchers were false and contained the false, fraudulent, and fictitious entries charged.

"For your better understanding, I will hand you the indictment, directing your attention to the fact that I have drawn a blue pencil through each and every count which has been withdrawn from your consideration. You will find that counts 1, 2, 3, 4, 9, 10, 11, 12, 19, 20, 21, 22, 23, 24, 27, 28, 29, 30, 31, and 32 refer to lumber; counts 5, 6, 9, 13, 14, 17, 18, 35, and 36 refer to wood; counts 25 and 26 refer to oats; and count 38 refers to labor. You will remember that the evidence shows that the defendant Morris L. Bridgeman was the duly appointed and qualified Indian agent at the Ft. Belknap Agency in the state of Montana, and that he took his office upon July 1, 1900, and continued to act as agent until the ending days of April, 1902, when, after some examination and report by inspectors in behalf of the government, he was suspended from the performance of his duties, and thereafter was superseded.

"An Indian agent is required by law to give bond before entering upon the duties of his office; and the statutes of the United States require that each Indian agent shall within his agency manage and superintend all intercourse with the Indians agreeable to law, and execute and perform such regulations and duties not inconsistent with law as may be prescribed by the President, Secretary of the Interior, Commissioner of Indian Affairs, or the Superintendent of Indian Affairs. He is obliged to reside and keep his agency within or near the territory of the tribe for which he may be agent; and he is expressly prohibited from receiving any compensation other than such as the law expressly gives him. As residents of this state, where, as a matter of common knowledge there are a great many Indians, it is within the ordinary observation of all of us that the position of an Indian agent is one of responsibility and confidence. The Indians may be regarded as a people in a state of pupilage, their relation to the United States being characterized as that of the wards of the nation. They are dependent upon the United States largely for their daily food and for protection; they rely upon the nation's greatness and its power; they appeal to it for relief of their wants, and, as we have heard in the testimony during the trial, speak of the general government or the President of the United States as their 'Great Father.' To be an agent of the government for such a trust, therefore, demands qualities of absolute honesty, diligence, fair dealing, and intelligence, to the end that no wrong may be done either to the Indians or to the government. When a man undertakes a public office, he should know the law, and it is his duty to inform himself with diligence and care of those rules and regulations of the department which he is required to observe, and which may be necessary for him to know to enable him to act prudently and rightly; and the presumption in

140 F.—38

this case is that the defendant Bridgeman did this, and he is chargeable with having done it. The regulations of the department may be severe; they may be inconvenient; they may, in the judgment of the agent, be unwise, and in fact may even impede the successful and expeditious construction of desired improvements upon the reservation. But the agent and all subordinates are nevertheless under obligations to follow them, and he and they must follow them if they would perform their official duties correctly, unless relieved by proper superior authority.

"I shall not enter into a detailed statement of the testimony as heard by you, inasmuch as counsel for the government and defendant have taken ample time in their arguments to marshal the facts, and by consent you have been allowed to write down memoranda of the accounts, vouchers, and exhibits put in evidence before you. In order to convict the defendant under the counts which indict him for making or causing to be made and presenting and causing to be presented for payment or approval of the Commissioner of Indian Affairs any claim or claims upon or against the government or any department or officer thereof, knowing such claims to be false, fictitious, or fraudulent, you must be satisfied from the evidence: (1) That the claims, or any of them, as you may find, as described in the indictment in the several odd-numbered counts thereof, were made and presented by defendant Bridgeman as Indian agent, or that he caused them, or any of them, to be made and presented to the government at Washington, for payment or approval. (2) That the said claims or any of them were false, fictitious, or fraudulent. (3) That the defendant Bridgeman knew such claims, or any of them, were false, fictitious, or fraudulent.

"A false claim means a statement or a claim which is not true. I think that the law did not intend to make a mere mistake, made through error or inadvertence, to be brought within the definition of a false claim as used in the law, if it was believed by the agent to be true. An error, for instance, might occur in the amount of figures, or in the name, or there might even be an inadvertent statement of a claim which might be technically in fact false. And if it were not known to the agent, and if he did not mean to make a false claim, a mistake thus honestly made would not expose him to punishment under the statute. Neither is a mere lack of business capacity or prudence what the statute would punish for. But if the entry was an untrue one, and was known to the agent to be untrue and false, and was by him certified to while so knowing its false and untrue nature, then a jury should find that such a person, if on trial, did, within the meaning of the statute, make a false claim. A fictitious claim against the government is one preferred against it for supplies said to have been furnished to the government, or for services said to have been rendered to it, no part of which said supplies or services were in fact rendered or supplied. A fraudulent claim against the government is a false or fictitious claim, gotten up or contrived by some person or persons with the design or purpose to deceive or defraud the government or its departments or officers in Washington, or to present it for approval or payment.

"Under the counts numbered in even figures, which charge the defendant with having, for the purpose of obtaining payment or approval of the alleged false, fictitious, or fraudulent claims, made, used, or caused to be made or used certain false receipts, vouchers, rolls, accounts, or claims, knowing the same to contain fraudulent or fictitious statements or entries, the proof must satisfy you that the purpose of the defendant was to obtain payment or approval of such claims, that the claim or account, or voucher, so made and presented, was false, and that the defendant knew that said claim or account or voucher contained the fraudulent or fictitious statement or statements, or entry or entries. It is not necessary that the proof should show that there was in fact an approval or payment of any such false vouchers or claims by the government. It is enough if there was a purpose on defendant's part to obtain payment or approval of such false and fraudulent claims, provided he knew such claims or vouchers were false, fictitious, or fraudulent. In arriving at what the defendant's purpose or intention was, it is proper for you to take into consideration all the evidence and circumstances of the case.

"There is evidence in the case going to show that certain payments said to

have been made to Indians were in fact not made. The defendant would meet this with evidence tending to show that notwithstanding such evidence, and notwithstanding the fact that the moneys said to have been paid to the Indians were not in fact paid in certain cases, yet the amount of money authorized to be expended by the department in Washington was not exceeded and that there were in fact payments to others of the sums of money authorized, and that, therefore, there was not any purpose on his part to secure the approval of false, fictitious, or fraudulent claims. This, however, would not be a justification, if the vouchers were in fact false, fictitious, or fraudulent, and if the defendant knew that they were false, fictitious, and fraudulent, and if his purpose in making and presenting such vouchers was to obtain payment or approval of them by the government.

"It is unquestionably true that the defendant had a right to presume that civil service clerks detailed by the department at Washington to perform certain duties at the agency were honest and would faithfully perform their respective duties, and would prepare none but honest and truthful claims and vouchers for the agent to sign. It is undeniable, however, that certain of the accounts and claims, the body of which were in the handwriting of the then chief clerk, Fitzpatrick, were not truthful, but were purposely made false. The admissions of Fitzpatrick prove the falsity of such accounts or vouchers or claims made while he was at the agency up to October, 1901, and he has admitted his own willful violation of the law and the regulations of the Interior Department at Washington. Under such circumstances you should scrutinize his testimony with extreme care, in considering it in connection with all the other evidence before you, in arriving at a conclusion as to whether or not the defendant himself, when he signed the vouchers and claims, also knew of their false, fictitious, and fraudulent statements and entries. If the defendant did have such knowledge or belief when he did sign the vouchers or claims, he is guilty under the counts charging him with making and presenting the particular false, fictitious, and fraudulent claims and accounts testified to by Fitzpatrick as made out by him (Fitzpatrick) ; but if the defendant signed such vouchers or claims, so made out by Fitzpatrick, honestly and without knowledge or belief of their false character, you should acquit him under such counts.

"There is evidence tending to show that the defendant was a drinking man, and that during the time he was agent he drank a great deal and was frequently more or less under the influence of liquor. This testimony was admitted that you might have before you all the facts and circumstances surrounding or shedding light upon the making and presenting of the claims and vouchers, to the end that you may weigh them all in determining whether the defendant, at the time of the making and presenting, had knowledge that the claims and vouchers contained any false, fraudulent, or fictitious statements. But drunkenness is not an excuse for crime. As a general rule, voluntary intoxication affords no excuse, justification, or extenuation of a crime committed under its influence, and you should consider the evidence upon this point with great caution.

"The defendant has taken the witness stand in his own behalf, and you should not disregard his testimony upon the ground alone that he is the defendant. He has a right to do this. You should consider his testimony in connection with that of all the other witnesses in the case. But, in passing upon the credibility of his statements, you should remember that he is the defendant, and you should consider his interest in the result of the case, his motives in testifying, and the nature and seriousness of the crime charged. There is a presumption of law that a witness is presumed to speak the truth. This presumption, however, may be repelled or overcome by contradictory evidence, or by evidence that the general reputation of the witness for truth, honesty, or integrity is bad. You, and you alone, are the judges of the credibility of the witnesses. If you believe that any witness has willfully sworn falsely to any material matter involved in the case, you have the power to disregard the testimony of such witness entirely, and throw it all aside, except in so far as it may be corroborated by the testimony of other credible witnesses.

"It is proper, in directing your attention to all the facts and circumstances

brought out in the testimony heard by you and to be considered, that I call your attention to the proof introduced as to the former good reputation of the defendant for honesty and integrity in the community in which he lived. The law makes.it your duty to consider this in connection with all the other evidence in the case, and if, upon consideration of the evidence in the whole case, including that of good character, you are satisfied of the defendant's guilt beyond a reasonable doubt, you should convict; otherwise, you should acquit.

"You may convict the defendant of any or all the counts submitted to your consideration and under which he is tried, or you may acquit him of any or all. If you convict him under one or more counts, you should specify the particular counts under which you find the verdict of guilty; and if you acquit him under any one or more counts, you should specify in your verdict that you find him not guilty under such and such counts; that is, let your verdict, if it be guilty, specify the particular charges of which you may convict him. If you find him not guilty under any and all counts, your verdict should be simply not guilty.

"All 12 of you must concur in any verdict rendered.

"I now submit the case to you. gentlemen. Weigh the evidence very carefully and impartially, give respectful consideration to the arguments of counsel, conscientiously apply the law to the whole case, and you will do your duty between the government of the United States and this defendant."