UNITED STATES v. BEEBE.

(District Court, M. D. Pennsylvania. October 20, 1906.)

No. 108, October Term, 1906.

COUNTERFEITING—PASSING COUNTERFEIT UNITED STATES NOTE—NOTE OF STATE BANK.

A defendant cannot be convicted of passing a counterfeit United States note under Rev. St. § 5431 [U. S. Comp. St. 1901, p. 3671], where the note passed was a genuine note issued by a state bank, unaltered, although it may have been worthless and may have had some resemblance by reason of its color to a United States note.

Indictment under Rev. St. § 5431 [U. S. Comp. St. 1901, p. 3671], for passing a counterfeit $5 treasury note or greenback. On motion to direct verdict for defendant.

C. L. Hawley, for the motion.

The bill which was passed was a $5 note of the Oil City Bank, a state institution, issued in 1862. No doubt it is intrinsically worthless, but still it is genuine and not counterfeit. The suggestion that it bears resemblance to a United States treasury note because the engraving on the back is in green, so as to bring it within the act of Congress, is absurd. The act was not intended for any such case, and cannot properly be extended to it. If the party who took the bill has been cheated, the state law is ample to deal with the subject.

S. J. M. McCarrell, U. S. Atty., and A. T. Searle, Asst. U. S. Atty., opposed.

The note does not have to be in direct imitation of an obligation of the general government. It is sufficient if it bears such a resemblance as is calculated to deceive a person of ordinary intelligence and observation. United States v. Williams (D. C.) 14 Fed. 550; United States v. Fitzgerald (D. C.) 91 Fed. 374. That such was the case here is shown by the fact that the bill passed. And the question of similitude is for the jury. The case is exactly like U. S. v. Stevens (D. C.) 52 Fed. 120, where a conviction for passing a note of a broken state bank was sustained.

ARCHBALD, District Judge. This is a case to be dealt with by the state, and not the federal, law. On its face the bill is that of the Oil City Bank, a state institution, and is to all appearances genuine. Whether the bank is now in existence we do not know; nor whether, if it is, the note would be redeemed upon presentation. Nor is it material. The result is the same, assuming the bill to be worthless. The charge is that it is in similitude of a $5 treasury note or greenback, for which it is liable to be mistaken because of the color in which the back is printed, and as which it was passed by the defendant. It may be, according to the cases cited, that there does not have to be a direct imitation or counterfeiting of the terms and design of a government note or obligation in order to bring the case

within the act of Congress; but there must at least be such a resemblance, if not simulation, as is not only calculated to deceive a person of ordinary intelligence, but as enables us to say with some degree of certainty that, in disposing of or using it, the party charged was evidently trying to palm it off as a genuine obligation of the government. In U. S. v. Fitzgerald (D. C.) 91 Fed. 374, the security was purposely dressed out to look like a United States 5–20 gold bond, for which it might easily be mistaken. And while in U. S. v. Williams (D. C.) 14 Fed. 550, the general principle which is contended for by the government is recognized, it was held that an unsigned obligation would not support a conviction, notwithstanding that there was a general resemblance otherwise which would do so; which materially qualifies it. U. S. v. Stevens (D. C.) 52 Fed. 120, is no doubt in line with the case in hand. But opposed to it, and of equal authority, are U. S. v. Wilson (D. C.) 44 Fed. 751, and U. S. v. Kuhl (D. C.) 85 Fed. 624, in each of which it was held that there could be no conviction for passing a confederate note, even though in size, shape, color, and denomination it might be like the current money of the United States, for which it was received. Justifying this conclusion, it is pointed out in the latter case that a broader ruling would make all state bank issues obnoxious to the act, whether solvent or insolvent; with regard to which it may also be further observed that state currency is not prohibited, but is merely taxed out of existence; notwithstanding which, if any one desires to put out notes or bills to pass as money, there is nothing to prevent it, to say nothing of being charged with counterfeiting if they happen to prove worthless. Even metal coins and tokens are not within the act, provided they are not imitative. U. S. v. Roussopulous (D. C.) 95 Fed. 977. And much more not, notes and bills, which are less likely to deceive. Had the defendant here simply had this bill in his possession, and made no attempt to pass it, even though there was enough to show from the possession of a number of other bills of like character that that was his ultimate purpose, could he have been indicted for having possession of counterfeit money, with intent to make fraudulent use of it? And yet we must be prepared to go that far, in order to sustain the present charge, which differs only in degree. The federal government is only concerned with protecting the people against spurious or counterfeit imitations of the money to which it gives currency, and to this the act is to be confined. It cannot, indeed, be extended further, without intrenching upon the reserved rights of the states, which we must be careful to respect, if the dual form of government which we have, is to be preserved.

Motion allowed, and verdict of not guilty directed.