## ST. CLAIR v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.
April 12, 1926. Rehearing Denied
June 14, 1926.)

No. 6982.

1. **Counterfeiting** ⬿16—**Indictment charging defendant with possession of counterfeited internal revenue strip stamps of United States held good against demurrer, general or special, and against motion to quash (Act March 3, 1897 [Comp. St. §§ 6070–6077]).**

Indictment charging that defendant, on certain day and at certain place, possessed certain falsely made, forged, and counterfeited internal revenue engraved strip stamps of United States similar to genuine United States internal revenue engraved strip stamps used under Act March 3, 1897 (Comp. St. §§ 6070–6077), in bottling of distilled spirits in bond, and giving detailed description of stamps, *held* good against demurrer, general or special, and against motion to quash.

2. **Counterfeiting** ⬿12—**Proof that defendant had exclusive access to or control over premises in which counterfeited internal revenue strip stamps were found held unnecessary (Comp. St. §§ 6070, 6076).**

In prosecution, under Comp. St. § 6076, for possessing counterfeited internal revenue strip stamps, designated by section 6070, proof that defendant had exclusive access to or control over premises in which stamps were found *held* unnecessary.

3. **Counterfeiting** ⬿18—**Whisky bottle labels found in defendant's possession at time of arrest held competent as bearing upon his intent in possessing counterfeited internal revenue strip stamps (Comp. St. §§ 6070, 6076).**

In prosecution, under Comp. St. § 6076, for possessing counterfeited internal revenue strip stamps, designated by section 6070, whisky bottle labels found in defendant's possession at time of his arrest *held* competent as bearing upon his intent; they being closely related to very essence of crime charged.

4. **Counterfeiting** ⬿18—**Evidence showing defendant's purchase of paper out of which counterfeited stamps were made held admissible in establishing defendant's unlawful ownership and possession of counterfeited stamps (Comp. St. §§ 6070, 6076).**

In prosecution under Comp. St. § 6076, for possessing counterfeited internal revenue strip stamps, designated by section 6070, evidence showing purchase of paper by defendant out of which counterfeited stamps were made *held* admissible in establishing defendant's unlawful ownership and possession.

5. **Criminal law** ⬿1036(1), 1054(1).

Specifications of error relating to admission of evidence, not objected nor excepted to, cannot be considered by reviewing court.

6. **Criminal law** ⬿1056(1).

Charge of trial court cannot be reviewed, where no exception is taken thereto.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Albert St. Clair was convicted for violation of Comp. St. § 6076, relating to possession of forged, altered, or counterfeited stamps, designated by section 6070, and he brings error. Affirmed.

Mat. J. Holland, of St. Louis, Mo. (E. P. Hanifan, of St. Louis, Mo., on the brief), for plaintiff in error.

Allen Curry, U. S. Atty., and Carroll W. Harlan, Asst. U. S. Atty., both of St. Louis, Mo.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and YOUMANS, District Judge.

VAN VALKENBURGH, Circuit Judge. Section 6070, United States Compiled Statutes 1918, under the head of "Bottling of Spirits in Bond," provides that the registered distillery number, the state and district in which the distillery is located, the real name of the actual bona fide distiller, the year and distilling season, whether spring or fall, of original inspection or entry into bond, and the date of bottling, shall be placed upon an adhesive engraved strip stamp over the mouth of the bottle of spirits.

Section 6076 provides that every person who, with intent to defraud, has in his possession any forged, altered, or counterfeited stamp of this kind, shall be guilty of an offense. The plaintiff in error was indicted under this section. The indictment charged that on or about the 15th day of June, 1924, in the city of St. Louis, in the state of Missouri, within the division and district aforesaid, and within the jurisdiction of the court, plaintiff in error, with intent to defraud, unlawfully. willfully, knowingly, and feloniously did have in his possession certain falsely made, forged, and counterfeited internal revenue engraved strip stamps of the United States, made, forged, and counterfeited in the likeness and similitude of a genuine United States internal revenue engraved strip stamp, made and used under the provisions of the Act of Congress approved March 3, 1897, in the bottling of distilled spirits in bond; said falsely made, forged, and counterfeited strip stamps being in words, figures, and letters as therein set out. A detailed description was accordingly inserted. It was further alleged that the plaintiff in error then and there well knew that the same at the time of so having them in his possession had been falsely and fraudulently made, forged, and counterfeited.

The plaintiff in error was arrested while walking on Valentine street in the city of St. Louis, accompanied by a man named Berry. Berry was carrying a suit case belonging to and claimed by plaintiff in error; this suit case contained, among other things, a number of so-called whisky labels. When asked where he lived, plaintiff in error stated that he lived at 508 South Fourth street. A search was made of these premises, and the strip stamps, upon which the indictment in this case is bottomed, were found, and also some cuts and plates from which such stamps could be made. The paper used was known as "Pilgrim Bond" paper, handled exclusively by the Acme Paper Company of St. Louis. A representative of that company testified to the sale of such paper to St. Clair. It was readily identified by the watermark and by an initial which identified the Acme Paper Company. Strip stamps were found in that part of the space at 508 South Fourth street occupied by plaintiff in error, which contained, among other things, a bed which he said he sometimes used. He also testified that he owned two other residences in St. Louis, in each of which he reserved a room which he sometimes occupied. He claims that he merely had desk room at this place, because "I wanted a place where I was away from business, where they knew me, where I could do my reading and writing. It was just a sort of a way station where I could be convenient to the cars." The place at 508 South Fourth street was only a block and a half distant from 212 Valentine street, which plaintiff in error claimed as his voting home. The alleged tenant, from whom St. Clair claimed to have subrented, did not appear as a witness at the trial. The agent for the building testified that St. Clair himself had paid the rent on at least two occasions. One Richard E. Elliott, a printer at 305 South Third street, testified that on the day of the arrest St. Clair came to his shop during the afternoon and asked to have some labels cut in half. "I said, 'What kind of labels are they?' He said, 'They are some whisky labels.' A party left them at his place, thinking he had a cutter, and he did not. I said, 'No, you can't cut anything around here having anything to do with whisky.'" St. Clair sat down and read a paper until Elliott left. The man Berry, an employee of Elliott, remained. He is the man, as has been stated, who was carrying the suit case containing the whisky labels found at the time of the arrest. When questioned respecting these labels, plaintiff in error testified as follows:

"Oh, they were to be returned to 508 South Fourth street. They were not valuable. They were, I believe, printed several on a sheet. The question was if they could be cut in two they could be sold.

"Q. Could what? A. Cut in two.

"Q. How did you know? Where did you get the information, that if they were cut in two they could be sold? A. I didn't know, but he asked me to take them and cut them in two so that he could sell them, one of the parties in there, and I told him that I had no cutter any more, that I had sold my printing office some years before, en-

tirely, and had no facilities, but that I would try to get them cut."

The "party" who is claimed to have made this request was neither named nor identified. At the trial plaintiff in error was convicted and was sentenced to pay a fine of $100 and to be imprisoned in the United States Penitentiary at Leavenworth, Kan., for a period of two years. The errors relied on are:

(1) The refusal to sustain the defendant's motion in the nature of a demurrer to the evidence offered at the close of the government's case, for the reasons (a) that the indictment does not state sufficient facts to constitute an offense against the United States; and (b) that there was no substantial proof that the strip stamps, alleged in the indictment, and offered in evidence at the trial, were counterfeited.

(2) That the court erred in permitting the government to introduce in evidence the whisky bottle labels found in the suit case.

(3) That there was no evidence that the defendant was the exclusive occupant of the premises at 508 South Fourth street in the city of St. Louis, where the strip stamps were found, or had exclusive possession of such strip stamps.

(4) That the court erred in admitting evidence that the defendant purchased Pilgrim Bond paper similar to that alleged to have been used in making the alleged counterfeited strip stamps.

(5) The charge of the court as to the weight to be given to the evidence offered to prove the good reputation of the accused is also criticised in the brief.

[1] The indictment contains all the essential elements of the offense with such definiteness that the defendant was fully apprised of the charge he was called upon to meet, and protected against a second prosecution for the same offense. It was good against demurrer, general or special, and against motion to quash. Furthermore, it was unchallenged in any way other than by demurrer to the evidence, and after verdict by motion in arrest of judgment. There is therefore no merit in this specification.

That the strip stamps in question were counterfeits was abundantly established by qualified government officers, and neither evidence nor contention to the contrary appears in the record.

[2] It was unnecessary to prove that the defendant had exclusive access to or control over the premises in which the stamps were found. Substantial evidence was introduced from which the jury might find that posses-

sion was in the defendant. Furthermore, this question was clearly and correctly submitted by the court in its charge.

[3-6] The whisky bottle labels found in defendant's possession at the time of his arrest were competent and material as bearing upon his intent; they were closely related to the very essence of the crime charged. The same is true of the Pilgrim Bond paper out of which the counterfeited stamps were made. The purchase of this paper by the defendant was a strong circumstance in establishing the unlawful ownership and possession. Furthermore, as admitted in his brief, there was neither "objection nor exception to the admission of the testimony as to defendant's possession of whisky bottle labels and his purchase of Pilgrim Bond paper." Therefore these specifications, even though they were meritorious, cannot be considered. None of the character witnesses offered by the defendant were able to qualify as being familiar with his reputation in the community in which he lives; nevertheless the trial judge did give the defendant the benefit of such attempted proof, although, as he said: "Perhaps I would be warranted in not submitting that question to you." The charge as given was unobjectionable, but, in any event no exception was taken thereto. The question is therefore not preserved for review. Feinberg v. United States (C. C. A.) 2 F.(2d) 955; McCormick v. United States, (C. C. A.) 9 F.(2d) 237, decided November 13, 1925.

It follows that the judgment below should be affirmed, and it is so ordered.