## ARMSTRONG et al. v. UNITED STATES.
### No. 8956.

Circuit Court of Appeals, Eighth Circuit.
Nov. 14, 1930.

Edward E. Naber and James H. Cowan, both of Kansas City, Mo., for appellants.

William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

Appellants, hereinafter referred to as defendants, were convicted on two counts of an indictment charging them with violations of the provisions of the Act of March 3, 1897 (26 USCA §§ 411–417). One of these counts charges that:

"On the 31st day of May, 1929, at No. 3005 East 59th Street, in Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, one Charles Armstrong, alias Arnold, and one Earl C. Roberts, alias George Smith, wilfully, knowingly, unlawfully and feloniously, and with the intent then and there to defraud divers persons to the grand jurors unknown, did possess certain false, forged and counter-

feit Internal Revenue Strip Stamps, the same being then and there in the resemblance and similitude of the true and genuine Internal Revenue Strip Stamps of the United States which had theretofore been made and used by the Internal Revenue Department, pursuant to the provisions of the Act of March 3, 1897, said false, forged and counterfeit Internal Revenue Strip Stamps being in words and figures as follows, to-wit:

against them; (3) assign error in certain rulings of the court on the admissibility of evidence; and (4) challenge the correctness of the court's instructions.

■■■ In support of their contention that the indictment is insufficient, it is urged that the offenses there charged are not described with sufficient precision and certainty. It is, of course, essential that an indictment for of-

| 'One | Bottled in Dist. | 100 | Bottled in Dist. | 100 |
| Pint | Guaranteed | Proof | Spring 1916 | · Proof |
| | Straight | RYE | Spring 1924 | |
| | Bottled in Dist. | | Bottled in Dist.'" | |

The other count, in the same language, charges the defendants with the use of these false, forged, and counterfeit internal revenue strip stamps.

Both counts of the indictment are based on the Act of March 3, 1897, generally known as the Bottling in Bond Act. Title 26 USCA §§ 411–417. Section 411, among other things, provides that:

"Every bottle when filled shall have affixed thereto and passing over the mouth of the same such suitable adhesive engraved strip stamp as may be prescribed, as hereinafter provided," etc.

Section 412 of the same act provides in part as follows:

"The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may * * * prescribe and issue the stamps required."

Section 417 of the act provides in part as follows:

"Every person who, with intent to defraud, falsely makes, forges, alters, or counterfeits any stamp made or used under any provision of sections 411 to 418 of this title, or who uses, sells, or has in his possession any such forged, altered, or counterfeited stamp, or any plate or die used or which may be used in the manufacture thereof, * * * shall on conviction be punished," etc.

Defendants filed a demurrer to the indictment, which was overruled, and at the conclusion of all the evidence they moved for a directed verdict, which motion was also overruled. Proper exception was saved to the order overruling their demurrer, and to the ruling of the court denying their motion for a directed verdict. On this appeal they (1) renew their attack upon the indictment; (2) challenge the sufficiency of the evidence to sustain the verdict and judgment entered

fenses such as are here charged allege the essential ingredients of the offense with such certainty as will apprise the accused of the nature of the particular accusation on which he is to be tried, so as to enable him to plead the indictment and judgment thereon in bar of any subsequent prosecution for the same offense. Here, it is observed, that the indictment contains a description of the alleged · counterfeit, and the instrument alleged to have been counterfeited is set out as near as may be by copy. Defendants cite no authorities sustaining their very general contention, and we assume that none can be found. A similar indictment was before this court in St. Clair v. United States, 12 F.(2d) 376, 378, where, in an opinion by Judge Van Valkenburgh, it is said:

"The indictment contains all the essential elements of the offense with such definiteness that the defendant was fully apprised of the charge he was called upon to meet, and protected against a second prosecution for the same offense. It was good against demurrer, general or special, and against motion to quash."

See, also, Banta v. United States (C. C. A.) 12 F.(2d) 765; Goldberger v. United States (C. C. A.) 4 F.(2d) 10; United States v. Behrman, 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619.

The demurrer to the indictment was therefore properly overruled.

■■■ The sufficiency of the evidence was directly challenged by a motion for a directed verdict, and it is contended that there was no proof to show that the form of stamps described in the indictment had in fact been prescribed and issued by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, or that the strip stamps possessed and used by the defendants

were in the resemblance and similitude of genuine strip stamps prescribed by the Commissioner of Internal Revenue. It appears from the record that on May 31, 1929, three police officers went to 3005 East Fifty-Ninth street, Kansas City, Jackson county, Missouri, and, on looking through the basement windows, saw the defendants at work corking, stamping, and capping a number of filled pint bottles, and placing them, when so corked, stamped, and capped, in a carton. After finishing capping these bottles, defendant Armstrong put several bottles in his pocket and started toward the basement door, but, observing one of the officers, he removed the bottles from his pocket and placed them on a shelf. The defendant Roberts then opened the door and let the officers into the basement. The officers thereupon arrested the defendants, and found in the basement 124 pint bottles of whisky, some strip stamps that had been used, and a can of celon caps. Some of the stamps had been placed over corks in bottles filled with colored whisky and bearing labels of "Old Taylor Kentucky Whisky." These articles found by the officers in possession of the defendants were identified by witnesses and marked for identification as Exhibits 1 to 7, inclusive, and were offered and received in evidence over defendants' objection. These exhibits are more particularly described as follows: Exhibit 1, purporting to be a revenue strip stamp; Exhibit 2, paper label bearing the words "Old Taylor, a Straight Kentucky Whisky"; Exhibit 3, a case of 24 pints of whisky; Exhibit 4, a can of celon labels; Exhibit 5, a pint bottle containing colored fluid, bearing a strip stamp similar to Exhibit 1, and covered with a celon cap; Exhibit 6, a pint bottle similar to Exhibit 5; Exhibit 7, a bottle similar to Exhibit 5, with the exception that the word "Export" is used instead of the word "Rye," which exhibit was taken from Exhibit No. 3, a case of 24 pints of whisky. Exhibits 8 and 9 were not found in the possession of the defendants. Exhibit 8 is a pint bottle of whisky with genuine strip stamps attached, and Exhibit 9 is a sheet of genuine strip stamps.

W. H. Davenport, from the United States Secret Service Department, testified as an expert that Exhibit 1 was not a genuine United States internal revenue strip stamp, and that it was not engraved; that the strip stamp pasted over the bottle Exhibit 6 was not genuine; that Exhibit 8 was a pint bottle containing colored liquor, bearing the label "Echo Spring, Bourbon Whisky," with a genuine United States internal revenue stamp

over the top of the bottle, partly covered by a celon cap; that the stamp was printed by the government prior to 1924; that Exhibit 9 was a sheet taken from a book of genuine strip stamps printed by the government prior to 1919. These, when used, are cut from the sheet and put over the neck of the bottle, over the cork.

For the defense, Lester E. Kinley, also an expert witness, testified that unused stamps, similar to that on Plaintiff's Exhibit 8, were returned to the Department of Internal Revenue when new stamps were issued by the Commissioner of Prohibition, and that they were such stamps as those issued by the Commissioner of Internal Revenue. These exhibits were all physically produced for the inspection of the court and jury. Exhibits 1, 8, and 9 were all upon white paper of approximately the same length and width, all bore the same general design, all bore the words "One Pint" at one end and "100 Proof" on the other, all had background of green with a surcharge in red, all had words in white in lines extending lengthwise along the tops and bottoms, all had the printed surcharge of two seasons, denoting the time of making and the time of bottling, and all required in preparation two processes with different impressions and ink colors in the making, all were produced from etchings or plates other than type. The stamp on Exhibit 8 was similar in size, shape, general design, colors, paper, and manufacture to those on Exhibit 9.

It is insisted that there is no proof that the genuine stamps used in evidence for purpose of comparison were of a form made and used by the Internal Revenue Department. This contention is not sustained by the record. The witness Davenport testified that the stamp on Exhibit 8 was genuine, and that it was printed by the government prior to 1924. The witness Kinley, on behalf of the defendants, testified that strip stamps, such as on Exhibit 8, were not now being used, and that they had not been used within the last year, that these had been issued by the Commissioner of Internal Revenue, but that within the last year prior to the date of the trial the stamps being used were prescribed by the Commissioner of Prohibition.

 It is urged that, while the statute provides that the Commissioner of Internal Revenue may prescribe the form of stamps, with the consent and approval of the Secretary of the Treasury, there was no proof that the genuine stamps shown in Exhibits 8 and 9 were so issued with the consent and approval

of the Secretary of the Treasury. It is conclusively shown that they were issued by the Commissioner of Internal Revenue, and it will be presumed that in so issuing these stamps that officer acted regularly and pursuant to proper authority. Goldberger v. United States (C. C. A.) 4 F.(2d) 10, 12; Maresca v. United States (C. C. A.) 277 F. 727; Porter v. Coble (C. C. A.) 246 F. 244; United States v. Fletcher, 148 U. S. 84, 13 S. Ct. 552, 37 L. Ed. 378. In Goldberger v. United States, supra, it is said:

"Whether the Secretary of the Treasury gave his approval to stamps prescribed by the Commissioner is a matter which might arise in a civil action against the Commissioner, and, conceivably, in a criminal action against him; but that stamps of this kind regularly prescribed and issued by the Commissioner in the course of his official duties have received this approval is a matter which, we apprehend, need not be averred in order to charge the offense, for the law supplies the omission by raising the presumption that the Commissioner acted with the requisite authority."

Neither is it important that the particular form of stamp shown by Exhibits 8 and 9, and that described in the indictment as being found in the possession of and being used by the defendants, was not at the time of the trial the form of stamp then being used, nor is it important that at the time of the trial these revenue stamps were issued or authorized by some officer other than that authorized to issue those described in the indictment. The stamps so issued were the genuine instruments of the government, and remained such, and were subject to counterfeit or forgery. It would be as reasonable to argue that, because the large sized bank notes had been replaced with smaller ones of different design, therefore the larger notes could no longer be counterfeited or forged.

■ It thus is conclusively established from the evidence that the stamp on Exhibit 8, as well as the stamps composing Exhibit 9, were genuine, and that they were printed by the Treasury Department and issued by the Commissioner of Internal Revenue. This being established, it remains to consider whether the stamps found in possession of and being used by the defendants were counterfeits, and whether the similitude between those and the stamps shown to be genuine and issued under the direction of the Commissioner of Internal Revenue was sufficiently established. The uncontradicted testimony shows that the stamps found in the possession of and being used by the defendants were not genuine, so that we need only consider whether these stamps were sufficiently similar to genuine stamps to authorize, as a matter of law, the submission of the issue of the similarity to the jury. Many of the points of similarity between the genuine and the counterfeit stamps have already been noted. The stamps were manifestly used solely for the purpose of misleading and deceiving prospective purchasers of the bottled whisky. The similitude necessary is that the counterfeit bear such a likeness to the genuine as to impose on and deceive persons of ordinary observation, using such caution as is ordinarily exercised by prudent men in the particular transaction in which they are engaged. Whether or not these instruments bore such resemblance to the genuine was a question of fact to be submitted to the jury on proper instructions, and not a question of law. Conley v. United States (C. C. A.) 284 F. 959; Wiggains v. United States (C. C. A.) 214 F. 970; United States v. Beebe (D. C.) 149 F. 618.

■ It is contended that the court erred in admitting in evidence Exhibits 1, 2, 3, and 4, for the purpose of showing an intent to defraud, before the government had shown that the defendants did possess and use counterfeit stamps. This goes only to the order of proof, which is a matter solely in the discretion of the trial court. It is also urged that the court erred in admitting in evidence other stamps, other bottles, whisky caps, and other articles found and seized at the time of the arrest of the defendants. A similar contention was before this court in St. Clair v. United States, 12 F.(2d) 376, 378, in disposing of which this court said:

"The whisky bottle labels found in defendant's possession at the time of his arrest were competent and material as bearing upon his intent; they were closely related to the very essence of the crime charged. The same is true of the Pilgrim Bond paper, out of which the counterfeited stamps were made."

This testimony was clearly admissible on the question of intent. See, also, Goldberger v. United States (C. C. A.) 4 F.(2d) 10; Banta v. United States (C. C. A.) 12 F.(2d) 765.

■ It is urged that the instructions given by the court did not, with sufficient particularity, describe to the jury the character and nature of the stamps which could have been prescribed by the Internal Revenue Department. It must be borne in mind that samples of such genuine stamps were before the jury,

and it appears that in its instructions the court specifically exhibited and referred to the genuine stamps, presumably those shown in Exhibits 8 and 9. Any attempt at a detailed description would have been of no assistance to the jury under the facts and circumstances in this case, and, certainly, a failure so to do could not possibly have resulted in any prejudice to the defendants. Other matters urged in support of the exceptions to the instructions have been covered in our discussion of the sufficiency of the evidence, and need be given no further consideration here.

We are of the view that the instructions properly presented the issues to the jury, and that the record contains no prejudicial error.

The judgment is therefore affirmed.