## UNITED STATES v. CLUB CHEZ PIERRE et al.

District Court, N. D. Illinois. March 1, 1929.

No. 7831.

George E. Q. Johnson, U. S. Atty., and Edgar B. Elder, Asst. U. S. Atty., both of Chicago, Ill.

Rose & Symmes, of Chicago, Ill., for defendant John Raklios & Co.

Irving Herriott and Louis Hart, of Montgomery, Hart & Smith, both of Chicago, Ill., for other defendants.

LINDLEY, District Judge. ▮ Some twenty-five prohibition agents testified to observation of repeated violations of the Prohibition Law upon the premises of defendant, with statements of approximately one hundred instances of the illegal possession and use of intoxicating liquor by patrons upon various dates within a period of somewhat more than a year, partly before and partly after the bill was filed, including a date within three days of the hearing and another during the hearing. These agents, sitting at tables in a moderately lighted restaurant, crowded with other tables, enjoyed only limited opportunities for observation, but they experienced no difficulty in observing these patrons in their illegal use of intoxicating liquor in the immediate proximity. Prior to

the issuance of the temporary injunction, patrons were supplied with ginger ale in pint bottles at one dollar per bottle, accompanied by spoons and cracked ice in bowls, for which at times an extra charge was made. Thereafter ginger ale was served in glasses. A table d'hote dinner was served at the restaurant for two dollars per plate. The inconsistency of the one dollar for the bottle of ginger ale, costing defendant less than fifteen cents, and two dollars for the full dinner, claimed by defendant to be equal to that served by any restaurant or hotel in the city of Chicago, is apparent. Theatrical amusement, intermittent with dancing by the patrons, was a feature of the entertainment provided. The doors of the restaurant opened at 6 o'clock in the evening and remained open until the early hours of the morning. Waiters were present when patrons were drinking, carried out empty bottles, covered empty bottles on chairs and were present when corks from champagne bottles popped. Intoxicated persons were seen upon the premises. The director of the orchestra sat at a table and openly drank of a champagne mixture with a patron who furnished the same, all of the ingredients other than the champagne having been supplied by a waiter.

The finding is inevitable that many persons frequented this place with the idea of seeing theatrical entertainment, dancing, eating and drinking intoxicating liquor. While warning cards against the latter were displayed, the patrons continued to use the place for the purpose of consumption of liquor. From the facts submitted it is impossible to find other than that the warning was a sham and that the management had no objection, but tacitly consented, to constant violations by patrons, provided the latter acted discreetly and in such manner as to attract as little notice as possible. The defense that the patrons who thus kept and used intoxicating beverages in premises of defendant with the latter's knowledge were of a prosperous class of people obviously carries no weight.

The Prohibition Act forbids the manufacture, sale and possession of intoxicating liquor for beverage purposes. Such possession for beverage purposes at any place other than one's home is illegal. The act provides that it shall be interpreted liberally, to the end that the use of intoxicating liquor as a beverage may be prevented. From these provisions of the law, as interpreted by the Circuit Court of Appeals for this circuit in Fritzel v. United States, Rothstein v. United States, and Tearney et al. v. United States, 17 F.(2d) 965, it follows that managers of restaurants may not close their eyes to obvious violations of the law by their patrons, and thus tacitly consent that that be done which the law forbids. The language of the Court in United States v. Budar et al. (D. C.) 9 F.(2d) 126, is applicable to the present case. Judge Geiger said: "In my judgment, upon the record here, scarcely more need be noted than the concessions—at times freely, at other times reluctantly, made by the defendants or parties in interest—that for years, daily and nightly, within the cognizance, with the express consent, and for the direct or indirect pecuniary consideration and advantage of those conducting them, these places were used by a generality of patrons for the purpose of there consuming liquor, and, of course, for its possession and keeping there in some way, by some one, to the extent essential for the accomplishment of that purpose. That is the narrowest statement of the cases possible to be made on behalf of the defendants." If we strike out the word "express," we have exactly the situation shown to exist in the present instance.

Congress has seen fit to provide that any public place where liquor is permitted to be kept for beverage purposes shall be deemed a nuisance. This action in rem is brought to abate the nuisance shown to exist. Under the facts and the Prohibition Law, but one conclusion is possible.

There will be a decree as prayed by the government, at the costs of the defendant. The motion for attachment for contempt will be denied, without prejudice to the government to renew the same, if additional evidence to support the same be procured.