UNITED STATES v. PRESSER.

No. 124.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

820

Edward I. Kaplan, of New York City, for appellant.

Lamar Hardy, U. S. Atty., of New York City (Walter B. Lockwood, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant was convicted of violating Section 80 of Title 18, United States Code, 18 U.S.C.A. § 80, by presenting false vouchers and affidavits to the Treasury Department, Procurement Division, in order to secure pay under certain contracts. The section in question is as follows:

"§ 80. (Criminal Code, section 35, amended.) *Presenting false claims; aiding in obtaining payment thereof.* Whoever shall * * * make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The indictment contained eleven similar counts charging the defendant with violating the above statute by submitting documents containing false statements in the payment of wage scale rates. The jury returned a verdict of guilty on all except the fourth and eighth counts, these two having been withdrawn.

The first count, which is typical of the others, alleged that by virtue of five certain specified contracts and amendments thereto made between the United States Treasury Department, Procurement Division, and the defendant, the latter became a contractor for the furnishing of trucks and station wagons, together with paid personnel for their operation, to the United States Treasury Department, Procurement Division, at various locations in New York City, and that the contracts and schedules of quantities and prices and specifications attached thereto, and amendments thereof, provided that the defendant was to pay hired chauffeurs at the rate of 75 cents per hour. The count further alleged that by virtue of the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, and the Act of June 22, 1936, known as the Emergency Relief Appropriation Act of 1936, 49 Stat. 1608, and the executive orders, rules, regulations and instructions made and promulgated by the President, the Secretary of the Treasury and the Administrator of the Works Progress Administration, pursuant to such Acts of Congress and the contracts and specifications and amendments, the payment of the hired chauffeurs at the rate of 75 cents per hour was a matter within the jurisdiction of a department and agency of the United States, to wit, the United States Treasury Department, Procurement Division. The count finally charged that on or about May 28, 1937, the defendant unlawfully made and used a false voucher account and affidavit, wherein he stated that he had paid James Hackett, a hired chauffeur, at the rate of 75 cents per hour, whereas the rate actually paid was 37½ cents per hour. There was no claim that the government did not receive all it contracted for in the way of trucks and personnel, and the only charge was the failure of

the defendant to pay the wage rate agreed. The other counts under which the defendant was convicted differed only in naming other chauffeurs alleged to have been paid less than 75 cents per hour.

The errors relied upon on this appeal are (1) that the government failed to establish that the payment of chauffeurs at the rate of 75 cents per hour was a matter within the jurisdiction of the Treasury Department by virtue of the legislative enactments and executive orders, rules, regulations and instructions; (2) that there was no evidence that there was an intent to deceive the government; (3) that there were errors in the admission and exclusion of evidence; and (4) that there was error in the imposition of the sentence of a year and a day.

[redacted] The payment of the wages required by the contracts was a matter within the jurisdiction of the Treasury Department.

Under the Emergency Relief Joint Resolution of April 8, 1935, 49 Stat. 115, the President was authorized to direct the expenditure of funds on work projects and in doing this to establish and prescribe the duties and functions of necessary agencies within the Government. He was further given authority to determine rates of pay for all persons engaged in any project financed by funds appropriated under the General Resolution, provided the rates would not affect adversely or tend to decrease those paid for work of a similar nature.

By Executive Order No. 7034, dated May 6, 1935, the President set up the Works Progress Administration which was to be responsible to the President for the execution of the work relief program. Under that order, the Secretary of the Treasury was authorized through the Director of Procurement to purchase all supplies and equipment for work projects. On May 20, 1935, the President fixed a schedule of wages for each state governing projects financed, but provided that on projects which the WPA Administrator should exempt, wage rates should be determined, subject to the approval by WPA, in accordance with local wage conditions, by the agency having general supervision of the project. On June 12, 1935, Harry L. Hopkins, the WPA Administrator, exempted the projects being prosecuted under contracts with contractors and determined that, subject to the approval of WPA, wages should be fixed in accordance with local wage conditions by the department, federal agency, state, municipality or other public body having general supervision of the project or portion of the project.

The Emergency Relief Appropriation Act of 1936 provided that wage rates for projects should not be less than those prevailing for work of a similar nature "as determined by the Works Progress Administration with the approval of the President." 49 Stat. 1609.

In the bid signed by the defendant covering rental of teams and supply of truck drivers it was provided that the bidder should pay to all hired truck drivers "the rate of wages established by the Works Progress Administration of New York City, which rate is made a part of the 'specifications' referred to herein." The specifications stated that a scale of wages of 75 cents per hour for truck drivers and chauffeurs had been established as a prevailing rate of wages to be paid the personnel working on rented equipment used by WPA of New York City and also stated that all lessors of equipment with personnel must pay the rates called for in the schedule and that "lessors failing to pay this wage scale will have their contracts cancelled." The bid by the defendant was accepted by T. J. Forde, State Procurement Officer, who directed the issuance of the various purchase orders on behalf of the Procurement Division in order to obtain equipment for WPA projects.

[redacted] We think it follows from the above that the President under his authority to delegate designated the Procurement Division of the Treasury Department to let the contracts and the Works Progress Administration to carry them out. The latter was authorized to fix the rate of wages subject to the President's approval and the specifications embodied in the contracts recited what those rates were. It was the duty of the Procurement Division, an official of which had signed the contracts with Presser, to require the wage scales fixed by WPA to be inserted therein and to be maintained by the contractor. It is to be presumed that the Procurement Division acted lawfully and inserted in the contracts such wage provisions as WPA had fixed with the approval of the President. We are entitled to draw the inference that the action of the Procurement Division in awarding a bid in which the wage rate

was stated as fixed by WPA at 75 cents per hour for chauffeurs was regular and that the specified rate had been actually so fixed and approved by the President as set forth. It is quite incredible that the schedule should have lacked all basis and the conduct of all parties in entering upon contracts which recognized a wage rate stated to have been fixed by WPA is irreconcilable with any such idea. We hold the presumption of regularity sufficient to justify the wage rates set forth in the absence of proof to the contrary. United States v. Fletcher, 148 U.S. 84, 13 S.Ct. 552, 37 L.Ed. 378; Nofire v. United States, 164 U.S. 657, 660, 17 S.Ct. 212, 41 L.Ed. 588; Stearns Co. v. United States, 291 U.S. 54, 63, 54 S.Ct. 325, 78 L.Ed. 647; Maresca v. United States, 2 Cir., 277 F. 727, 735; Goldberger v. United States, 3 Cir., 4 F.2d 10; United States ex rel. Petach v. Phelps, 2 Cir., 40 F.2d 500; Armstrong v. United States, 8 Cir., 44 F.2d 905.

█ The contention that there was no evidence that the defendant intended to deceive the government by the false vouchers he produced is based on the fact that drivers' wages of 75 cents per hour for an eight hour day, specified in contracts where the contractor was to receive only $6.23 per day for truck and driver, were so large as to make it improbable that the contractor was not violating his agreement to pay 75 cents per hour to the drivers. But the explanation Presser gave to Shropshire, the WPA Investigator, for the low rental of 23 cents per day for trucks and his written statement that he was paying the driver the full $6 per day (Gov. Exh. 3) left his intent to deceive a question for the jury.

█ In order to establish a violation of § 80, 18 U.S.C.A., supra, it was not necessary to show that the government lost money through the cutting of employes' wages by the defendant (United States v. Mellon, 2 Cir., 96 F.2d 462), nor was proof that the government was actually deceived necessary. A submission of vouchers that were false and intended to deceive in matters over which an agency of the government had jurisdiction would violate the statute. The case differs from Judge Brewster's decision in United States v. Long, D.C., 14 F. Supp. 29, for there the weekly payrolls of the contractor were submitted by him voluntarily when not required by law. Moreover, the court held that upon the evidence adduced the jury could not properly find

that the payrolls were submitted with fraudulent intent.

█ There were no errors in the charge or refusals to charge. It was enough for the jury to find that the statements of the defendant were knowingly false, irrespective of whether the government was deceived or lost money. The issue was whether the defendant intended to use a false voucher or affidavit in a matter within the jurisdiction of the Treasury Department and that issue was clearly left to the jury who returned a verdict against him.

█ The sentence is not open to review. The record shows no objection to it at the time it was imposed, nor was there any objection to the remark of the trial court as to the sentence stated to have been imposed by another judge after a plea of guilty by the defendant had been entered, that was afterwards withdrawn.

Judgment affirmed.