**UNITED STATES v. GOLDSMITH.**
**No. 181.**

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1940.

CHASE, Circuit Judge, dissenting in part.

Hugh A. Fulton, Asst. U. S. Atty., of New York City (John T. Cahill, U. S. Atty., and Ralph F. Lewis, Jr., Asst. U. S.

Atty., both of New York City, on the brief), for the United States.

James E. Wilkinson, of New York City (Horace G. Marks, of New York City, on the brief), for defendant-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The appellant was convicted on fifteen counts of an indictment charging him with making, or causing to be made, false and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States, and of willfully and knowingly falsifying and concealing, and covering up by a trick, scheme, and device, a material fact in a matter within such jurisdiction—all as ·prohibited by 18 U.S.C.A. § 80. The charge is based upon the allegations that the defendant advised and counseled six different aliens under the various circumstances set forth in the several counts in methods of procuring false evidence of their employment, earning capacity, and money on deposit in order to secure admission as quota immigrants to the United States, under 8 U.S.C.A. § 201 and following sections of the statutes. These methods include the procuring of false certificates from supposed employers of the aliens showing that the latter had been steadily and gainfully employed, and of statements from banks showing balances on deposit, built up by the simple process of borrowing the money for the purpose of deposit, and the use of such certificates and statements, as well as statements of the aliens themselves, in making applications for immigration visas. The matter is pertinent on such applications because 8 U.S.C.A. § 136(i) excludes "persons likely to become a public charge" from admission into the United States, and 8 U.S.C.A. § 202(f) prohibits the issuance of an immigration visa by a consular officer when he knows or has reason to believe that the alien is inadmissible under the immigration laws.

The appellant has not brought before us any of the evidence or the proceedings at the trial, but limits his appeal to an attack upon the validity of the indictment. He asserts that the charges made against him are legally insufficient because none of them allege financial or property loss to the United States or injury or damage to its property. The statute relied on for the prosecution, Criminal Code, § 35, as amended, is a part of what is now a series of extensive prohibitions, 18 U.S.C.A. §§ 80, 82–86. It first prescribes the presentation to the United States or its agencies of a false claim for payment or approval, and then continues with the provision particularly pertinent here: "or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry *in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder,* shall be fined not more than $10,000 or imprisoned not more than ten years, or both." The italicized words above were inserted by an amendment of 1934, which omitted the following words previously appearing after the word "whoever" at the beginning of the clause: "for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder." The same Act of 1934 made extensive·changes in that portion of the statute found in 18 U.S.C.A. § 82 by adding provisions prohibiting the willful injury to or the committing of depredations against property of the United States.

Until the statute was amended in 1934, allegations of financial or property loss were necessary to sustain a conviction, as the appellant claims. But as made clear in United States v. Mellon, 2 Cir., 96 F.2d 462, certiorari denied 304 U.S. 586, 58 S. Ct. 1061, 82 L.Ed. 1547, and United States v. Presser, 2 Cir., 99 F.2d 819, that element is no longer necessary. Thus, as stated in United States v. Mellon, supra, 96 F.2d at page 463: "The appellants question the sufficiency of the indictment on the theory that there can be no violation of 18 U.S.C.A. § 80 without pecuniary loss to the government. Before the amendment of 1934 the scope of the statute was, indeed, so

limited. United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616; United States ex rel. Starr v. Mulligan, 2 Cir., 59 F.2d 200. But by the amendment just mentioned the statute was extended to cover the willful making of any false or fraudulent statements or representations 'in any matter within the jurisdiction of any department or agency of the United States.' In this respect the element of pecuniary loss to the government is no longer an essential ingredient of the crime." And in United States v. Presser, supra, 99 F.2d at page 822, it was pointed out that to establish a violation of the Act "it was not necessary to show that the government lost money through the cutting of employes' wages by the defendant (United States v. Mellon, 2 Cir., 96 F.2d 462), nor was proof that the government was actually deceived necessary."

█ Appellant asserts, however, that the statements in these cases were but dicta made without appreciation of the bearing of congressional reports and debates on the amendment of 1934 which, as he claims, demonstrate that the statute was limited as before. We are clear, however, that the statements were necessary to the decisions, as the opinions assume. For in the Mellon case the point is cited in support of the validity of an indictment charging a false statement to a bank insured under the National Housing Act, 12 U.S.C.A. § 1701 et seq., for the purpose of securing a loan under it. And in the Presser case the statement was made to support a conviction of a contractor furnishing trucks and station wagons and their operating personnel under a government contract wherein he agreed, among other things, to pay wages at a certain standard rate per hour; the proof was that he had not paid the required wages, though he had so stated in his affidavits to the Procurement Division of the Treasury Department. Compare also United States v. Breen, 2 Cir., 96 F.2d 782, certiorari denied 304 U.S. 585, 58 S.Ct. 1061, 82 L.Ed. 1546.

The claim that the congressional proceedings on the amendment of 1934 disclose a lack of legislative intent to penalize the making of false statements where no loss to the government is shown—that the intent was limited to the providing of penalties for willful injuries to or depredations against public property and the like—we think is unsupported. At most, the evidence as to such intent is of a negative nature; the argument is that absence of discussion on this point, while the other points were discussed (albeit scantily), demonstrates an intent to leave this provision unchanged. That this is a fair interpretation of the proceedings in Congress seems doubtful, for the senator in charge of the amendatory Act in the Senate urged it as necessary because, among other reasons, there was then nothing to permit the government to "prosecute persons who are engaged in the 'kick-back' practice," and "they make false returns, claiming that they paid certain amounts to their employees, when they have not done so." 78 Cong.Rec. 11270–11271 (1934); cf. also ibid. 8136 for the discussion in the House. Since the senator expressly refers to practices not previously prohibited (i. e., as false claims against the United States), he must have had in mind practices similar to the ones interdicted in the Presser case without proof of financial loss to the government. Moreover, the committee report [Sen.Rep. No. 1202, 73d Cong., 2d Sess. (1934)] shows that this change came in committee from proposals of the Department of the Interior for the purpose of reaching the presentation of false papers in connection with the regulation of shipments of "hot oil," and of false affidavits as to wages paid by contractors for the Public Works Administration (the situation of the Presser case again). In any event, such uncertain and at best negative evidence of legislative purpose cannot serve to limit the clear statement of the new statute.

█ Appellant also relies on the absence of change in the title, "Presenting False Claims"; but conclusions drawn therefrom can have no bearing unless "ambiguity is present." Forlini v. United States, 2 Cir., 12 F.2d 631, 633. If it is important, we may note that express running heads referring to "concealing material facts" and "false statements or representations" were tacked onto the margin of this provision by a later amendment of April 4, 1938, 52 Stat. 197, 18 U.S.C.A. § 80 et seq.—applicable to at least several of the counts herein—which made some minor changes of punctuation and arrangement in the complete Act.

Finally, United States ex rel. Kessler v. Mercur Corp., 2 Cir., 83 F.2d 178, affirming D.C.S.D.N.Y., 13 F.Supp. 742, certiorari denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed.

424, is not contrary. That case merely holds that the Informer Statute, 31 U.S. C.A. § 231, which had incorporated the statute here in question within it by reference, was, on well settled principles supported by the precedents there cited, not changed or amended by the mere amendment of the incorporated statute.

■ We think it clear, therefore, that the statute applies to a false statement made or caused to be made to a consular officer of the United States for the purpose of securing the issuance of a quota immigration visa to an alien. This conclusion is sufficient to sustain the penalty imposed on the accused, for he was sentenced to serve a prison term on each of the first eight counts to run concurrently, while sentence was suspended on the other counts on which he was convicted. The sentence thus made on a single count was less than the maximum provided in the statute.

■■ The appellant assigns the further error, however, that those counts which allege his aid to an alien in borrowing money for deposit in a bank for the purpose of showing a bank credit charge no crime. Though the question thus presented is of general importance, its answer here will have a limited effect, for it concerns only three of the counts upon which the concurrent sentence was imposed. Moreover, other counts not here in issue set forth the practice of the Foreign Service of the United States in asking the immigrant applicant to complete a statement substantially as follows: "My or our total worth amounts to $500. It is composed of, cash $500." Such a showing by the alien to demonstrate that he will not become a public charge when he has only borrowed funds is certainly a false showing of his total worth and within the statutory prohibition. That is, the scheme here attacked by the prosecution must, it seems, eventually produce illegality if and when it achieves success.

The particular counts, however, do not set forth such statements by the alien as to his total worth. They charge that on the advice and instructions of the accused the alien borrowed $500, deposited it to his credit in a bank, and procured the bank's letter certifying to the balance in his account, with the intent of using it on his application to misrepresent the balance of his account and thereby to cause the con-

sular officer to issue a quota immigration visa to him under the statute 8 U.S.C.A. § 201 et seq. and "the Rules and Regulations duly promulgated thereunder." It is then charged that the letter was used in connection with the alien's application and was the means by which the defendant did unlawfully, willfully, and knowingly falsify and conceal and cover up by trick, scheme, and device from the consular officer that the sum had been borrowed to increase the apparent size of the alien's account.

If all that the charge amounts to is that the alien had created a bank account by borrowing money to do so, and that this fact and this only was stated truthfully and without intent to deceive by the alien on the making of his application, or that the appellant's counsel to the alien went no further than this, the objection would presumably be sound. But obviously the charge does go further than this. The real accusation is concealment or false evidence as to the fact that the alien is likely to become a public charge. Had that accusation been stated in so many words, it is difficult to see how the counts would have been objectionable. Here the indictment goes into the particulars by which the result is achieved; but the broader charge is necessarily included, since it is made clear that the purpose of procuring the bank letter was to secure a visa not properly obtainable under the Immigration Act and Regulations. Hence the charge is not proved unless there has been a misrepresentation of the alien's situation and likelihood of becoming a public charge. The particular facts alleged, however, are appropriate under all the circumstances to support an inference or conclusion of such an intentional misrepresentation, and hence of a violation of the statute.

"While it is certainly true that a valid indictment cannot be dispensed with as a predicate to conviction where an indictment is necessary, Grimsley v. United States, 5 Cir., 50 F.2d 509, it is also true that * * * a substantial compliance with the purpose of an indictment to acquaint the defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy, is sufficient." Hutcheson, C. J., in Hartwell v. United States, 5 Cir., 107 F.2d 359, 362.

■■ So indictments under this statute are to be upheld when they acquaint the

defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy. Bridgeman v. United States, 9 Cir., 140 F. 577, 590; Bost v. United States, 9 Cir., 103 F.2d 717. The allegations here in question become somewhat involved, as seems to be a way indictments have, at least where the now much urged simplification of criminal procedure[1] has not been authorized. But they do disclose the prosecution's case so that the accused knows what he must meet. That is sufficient.

The further claim is made that merely giving advice cannot be a crime. But the statute prohibits not only the causing of false statements to be made, but also the concealing or covering up of a material fact by a trick, scheme, or device; and the charge is that the trick here was the defendant's. The statute is broad enough to reach the brains behind a scheme, as well as the mere instrument of its execution.

Affirmed.

CHASE, Circuit Judge (dissenting in part).

I concur in the result except in so far as it is held that the counts in the indictment are good which are based solely on the allegation that the appellant advised an alien to borrow money to put into a bank account; to obtain a certificate from the bank to show what he had on deposit; and to present that in connection with his application for an immigration visa. For aught that is alleged the bank account was the absolute property of the alien. He could use it in any way he saw fit and was in no way bound to hold it for the repayment of the debt he incurred. There was no false representation of net worth or false representation of any material fact alleged as the actual or intended result of the advice the appellant is charged with having given aliens respecting bank accounts. Each count should state an offense. Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545. It seems to me that these counts have been held good only by supplying by implication the essential allegations necessary to bring them within the scope of 18 U.S.C.A. § 80.

---

[1] Am.L.Inst.Code Crim.Proc. §§ 154, 187; Rep. Att'y Gen. (1938) 4, 5; H. S. Cummings; 24 A.B.A.J. 513, 514, 625; H.R. 4587 and S. 1283, 76th Cong., 1st Sess. (1939); 25 A.B.A.J. 451.