## McCOY v. UNITED STATES.
### No. 11474.

Circuit Court of Appeals. Ninth Circuit.

Aug. 24, 1948.

Rehearing Denied Oct. 8, 1948.

778

Wellington D. Rankin and Arthur P. Acher, both of Helena, Mont., and Charles L. Zimmerman, of Butte, Mont., and H. B. Landoe, of Bozeman, Mont., for appellant.

John B. Tansil, U. S. Atty., of Billings, Mont., and Harlow Pease and Emmett C. Angland, Asst. U. S. Attys., both of Butte, Mont., for appellee.

Before GARRECHT, DENMAN, MATHEWS, STEPHENS, HEALY, BONE, and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

This case was heretofore argued and submitted to a division of this court and thereafter was reargued and resubmitted to the court en banc. The court's opinion and order affirming the judgment was filed and made June 28, 1948. On August 24, 1948, the opinion was withdrawn for correction and this opinion was filed. Judge Garrecht approved this opinion, but died before it was filed.

Irving McCoy was indicted in two counts with violations of 18 U.S.C.A. § 80 for the presentation of false claims and for aiding and abetting the presentations of false claims to an agency of the United States. The trial court denied motions to dismiss as to each count, but ordered a judgment of acquittal as to the first count, and denied the motion to acquit as to the second count. In accordance therewith a judgment of acquittal on the first count was had, and the second count was tried to a judge and jury. A verdict of guilty was returned. Judgment was entered and sentence was pronounced. McCoy appeals.[1]

It was charged in the second count that McCoy "knowingly and wilfully made and caused to be made and aided and abetted in

[1] One of the purposes of the Surplus Property Act of 1944 (58 Stat. 765) was to afford returning veterans an opportunity to establish themselves as proprietors of agricultural, business, and professional enterprises (50 U.S.C.A.Appendix § 1611(f) ). The Surplus Property Administrator had authority under the Act to prescribe regulations to effectuate the objectives of it to aid veterans in the acquisition of surplus property, in appropriate quantities and types, to enable them to establish and maintain their own small business, professional, or agricultural enterprises.

Under Regulation 7 (10 Fed.Reg. 6519), a veteran's own small business or professional enterprise is defined to include any commercial, industrial, manufacturing, financial, service, legal, medical, dental, or other lawful enterprise (other than agricultural—separate provision is made in this case) having an invested capital not in excess of $50,000, which a veteran maintains or desires to establish: Provided, That he is or will be, directly or indirectly, the sole proprietor thereof or that no person or persons, other than other veterans, have or will have any proprietary interest in the

making a false and fraudulent statement and representation and knowingly and wilfully presented and caused to be presented and aided and abetted in presenting said false and fraudulent statement and representation to the United States Government, * * * knowing said statement to contain fraudulent and false statements for the purchase * * *" of two surplus army trucks "* * * for the purpose of aiding a veteran to establish and maintain his own small business, profession or agricultural enterprise while in truth and in fact the defendant was not a veteran entitled to purchase said trucks under the provisions of the Surplus Property Act, 50 U. S.C.A.Appendix, § 1611 et seq. * * * and the purchase of said trucks were in fact for the purpose of being used in a non-veteran's business, viz., the business of the defendant."

Upon appeal McCoy raises several points, each of which he argues as constituting reversible error. We treat each point under appropriate subheadings.

The court refused to dismiss second count.

Was an offense against the laws of the United States charged in the second count of the indictment? It is claimed that the purchase by a veteran of surplus property for use in a non-veteran's business is not unlawful, so that even if the facts alleged in the indictment are true, the concluding allegation "and the purchase of said trucks were in fact for the purpose of being used in a non-veteran's business, viz., the business of the defendant" destroys the validity of the indictment. It is thus concluded by appellant that since the indictment alleges that the property was to be used in the business of the defendant, a non-veteran, but does not negative the idea that the property might have been required by the veteran, as a condition precedent to employment, all of the facts as alleged could be true and defendant could not be guilty. The Surplus Property Administration, Reg. 7, Fed. Reg., Vol. 10, No. 203, pp. 12849-50, is cited, in which it is provided that a veteran may be deemed to have his "own business" etc., for the purpose of acquiring property when he is "engaged by others as an employee or agent and is required by his employment to have his own tools or equipment."

Appellant's construction of the indictment is too narrow. In the first place every particular relating to the charge is not required to be set out in the indictment, and it is not required that every possible combination of facts, which would constitute legal acts, should be negatived in it. Hopper v. United States, 9 Cir., 142 F.2d 181.[2] However, the indictment is not reasonably subject to the construction appel-

---

enterprise, singly or together, directly or indirectly, in excess of 50% of either the capital invested in such enterprise or of the gross profits or income thereof.

Subsequent amendment of Regulation 7 (10 Fed.Reg. 12849), effective October 15, 1945, provided, "own" business or professional or agricultural enterprise means one of which more than fifty (50) per cent of the invested capital or net income thereof is owned by, or accrues to, a veteran or veterans. A veteran may be deemed to have his "own" business or professional or agricultural enterprise for the purpose of acquiring particular tools or equipment when he is engaged by others as an employee or agent and is required by his employment to have his own tools or equipment.

The subsection following relates to "small business." Any construction of facts in the instant case would bring it within the definition of small business.

[2] United States v. Goldsmith, 2 Cir., 108 F.2d 917, 920, 921: " 'While it is certainly true that a valid indictment cannot be dispensed with as a predicate to conviction where an indictment is necessary,

Grimsley v. United States, 5 Cir., 50 F. 2d 509, it is also true that * * * a substantial compliance with the purpose of an indictment to acquaint the defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy, is sufficient.' Hutcheson, C. J., in Hartwell v. United States, 5 Cir., 107 F.2d 359, 362.

"So indictments under this statute are to be upheld when they acquaint the defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy. Bridgeman v. United States, 9 Cir., 140 F. 577, 590; Bost v. United States, 9 Cir., 103 F.2d 717. The allegations here in question become somewhat involved, as seems to be a way indictments have, at least where the now much urged simplification of criminal procedure has not been authorized. But they do disclose the prosecution's case so that the accused knows what he must meet. That is sufficient."

lant puts upon it. The allegations of the indictment are that the *purpose* of the intended purchase was for a permitted use by the veteran in aid of his own business. Such purpose, however, was untrue, and the real purpose was in the interest of the non-veteran. The claim that the indictment is fatally defective rests upon a strained technical analysis of the drafter's rhetoric to the effect that a mere possible meaning of the language used could be that the trucks were purchased for use in the veteran's business of hauling for the non-veteran in his business. However, even such technical analysis does not lead to appellant's conclusions. The indictment must be considered as a whole, and the violated statute is cited in it and plainly informs the accused of the law allegedly violated. The gist of the government's accusation is that the real purpose for acquiring the trucks was in the interest of the non-veteran and not in the interest of the veteran. The construction of the sentences reciting the acts which constitute the alleged offense plainly sets off the real purpose of the veteran-applicant as opposite to and inconsistent with any purpose of the veteran in his own use of the trucks. The recital of such acts also precludes any possible double jeopardy, for they are definitely identified. See Bridgeman v. United States, 9 Cir., 140 F. 577; Bost v. United States, 9 Cir., 103 F.2d 717; and United States v. Goldsmith, 2 Cir., 108 F.2d 917, 920, 921.

In refusing to dismiss the second count, the court committed no error.

### The court refused to order an acquittal on second count.

■ Appellant argues insufficiency of evidence to sustain the judgment of conviction and that the court erred in denying a motion for the entry of a judgment of acquittal on the second count. The case is built on evidence, which, the government asserts, shows that McCoy aided and abetted Frederick Browning, a veteran entitled to purchase surplus property for his own use, in presenting purchase applications on their faces representing that the property is to be used for the veteran in a permissible enterprise, such representations, however, being false and fraudulent.

Appellant, the defendant below, offered no evidence other than testimony as to his good reputation. The evidence introduced by the government, then, stands upon its own intrinsic merit affected only by the testimony as to McCoy's reputation.

It was the theory of the government that McCoy had a general plan to use veterans as a means of acquiring war surplus property for his own business. It is disclosed by the evidence that McCoy procured a catalogue issued by the War Assets Administration from one Lahren, a veteran. When McCoy discovered that Lahren was going to Seattle to secure some equipment with $2500, he offered to and did drive him from Livingston, Montana, to Seattle. Together they went to several places in the State of Washington where supplies of surplus property were held, and McCoy proposed to Lahren to pay half of the purchase price on various items. McCoy proposed that the two each pay one-half the purchase price of about $5000 for a bulldozer to be resold in California. While in Seattle, McCoy went to fill out applications with Lahren for the purchase of surplus property and helped fill in the details after having read the application blank and thereby familiarizing himself with its requisites. Lahren did not finally consent to make any purchase, and nothing was purchased on the trip. On another trip McCoy drove Lahren to Butte, Montana, where a sale was being advertised, and on the way he picked up Browning, another veteran. Lahren testified that McCoy told him " * * * the more veterans he had, the more chance he had of getting equipment."

It was at Butte that the transactions occurred with which we are directly concerned. Browning testified that he received advice on the trucks from McCoy, and that he signed the application in question for the purchase of two surplus property trucks after discussing the matter with McCoy. McCoy paid the whole purchase price and took delivery. According to Browning, an arrangement was entered into between the two, whereby McCoy was to retain possession of the trucks until they were paid for, which was to be accomplished through hauling agreements with "Gallatin Indus-

tries", a corporation. After they had been paid for they were to belong to McCoy and Browning, "fifty-fifty." "Gallatin Industries" was named in the application as the enterprise in which the trucks were to be used for hauling lava rock. Browning and McCoy each had an interest in "Gallatin Industries". At the time of the trial the trucks had not been so used, and were still in the possession of McCoy, because, according to Browning, "Gallatin Industries" was waiting to get bigger block machines so the material could be used by the company. One of the two trucks was registered by McCoy in Browning's name, and the other one remained unregistered. Browning denied that McCoy had anything to do with the actual making of the application itself, and that he, Browning, made no false statement in the application. Browning, at the trial, could not tell the cost of the trucks, but testified that no writing passed between himself and McCoy, and nothing was said about interest on the money paid for the trucks.

It was stated in the application: "(4) I hereby certify that the surplus property herein applied for is to be used in and as a part of the enterprise described herein." A witness on behalf of the government, Mrs. Woodhull, testified that while the trial was in progress a note was given by McCoy to her to be delivered to the witness Lahren. The note, which is unsigned and undated, reads as follows:

"You have a right to change your story at any time. McCoy is a kind of boaster and might say he owned the trucks for a joke to be big. He also has a dealer's license and can buy surplus property anywhere.

"He heard the boys wanting to borrow money from me to buy trucks and I said I might loan it if they would go on the rock haul from Tom Miner basin to Bozeman for the cement blocks.

"The boys say they heard him trying to get trucks or cats from someone. So he should be careful.

"I don't know is a pretty good answer to most anything. Or I don't remember.

"You can say you offered to take me in as a partner and I didn't do it.

"Hi [meaning Hi Lahren], John Sexton and Browning, Dean and those fellows are on my side so you better look out."

It is claimed by appellant that there is no evidence as to McCoy's knowledge of representations made in the application signed by Browning, or that he suggested the making of any false representation. The recitation of facts hereinbefore stated does not support either of these claims. McCoy was familiar with the application form and the conditions stated therein. The trial court's comments on the evidence when it ruled on the motion to dismiss are apropos, and we quote them in the margin.[3]

In order to prove guilty knowledge, it is

[3] "The jury from the evidence could reasonably find that this sale was held as provided by the regulation of the Surplus Property Administrator dated October 10th, 1945, that veterans shall be given preference to purchase surplus property for the use in their own small business, agricultural and professional enterprise. In other words, the defendant knew that veterans themselves could not purchase except for those particular purposes and had no preference except for those particular purposes. That being to the jury could find under the evidence that the defendant knew that written applications were required by the government before even a veteran would be permitted to buy. That certain information must be given to the government by the veteran in order to permit the veteran himself to purchase at the sale, and that this was a part of the information that would be given by the veteran that the purchase was for the purpose of permitting the veteran to maintain his own small business, agricultural and professional enterprise. In other words, those representations were to be made to the government although he didn't see the particular blank that the witness signed. In addition to that there is evidence here a similar blank was placed before him and that he assisted in some degree in advising the veteran as to the data that should be put in that blank; that he had the blank and had an opportunity to read it. The witness, of course, could not testify whether he did or whether he didn't. The jury might find that he did.

"In other words, I believe that if it was the purpose of the defendant to get these trucks for his own business and if he knew that in order to do that represen-

not necessary that the defendant knew or dictated the specific words used by the veteran. If this were not so, an active aider and abettor need only look the other way when the paper was filled out. The transcript of the evidence is all one way that McCoy knew the purchase of surplus property was open to veterans only, and not being a veteran, he knew that he was ineligible to purchase at the sale either for a full or part ownership of the trucks. Even veterans could purchase surplus property only for the veteran's use in a permissible activity.

Of course, if Browning was the real purchaser and was purchasing the trucks for any of the permitted uses, Browning has committed no offense, and it follows that McCoy could not be guilty of aiding and abetting in any offense committed by Browning. The jury had a right to weigh Browning's full explanation of the purchase to determine whether Browning was purchasing for any of the permitted uses or whether he had fraudulently misrepresented as to such intended uses in the applications for the purchases and whether McCoy had knowingly and intentionally aided and abetted Browning in making the fraudulent representations.[4] Browning's own testimony is that the interest in the trucks was to be "fifty-fifty." That is, according to Browning's testimony, not only he was a purchaser, but so was McCoy. If the arrangement between Browning and McCoy had been actually made as testified by Browning and the purchases were for the purpose of aiding Browning in his own small business of acting with McCoy in using the two trucks for hauling rock for "Gallatin Industries," the arrangement was not within the law for the following reasons: The law, as we understand it, does not authorize the veteran to buy for another at least without a full disclosure of the facts.[5] No disclosure was made to the government that the purchaser's small business was connected in any way with McCoy. The interest of the veteran with a non-veteran in the enterprise or income therefrom was not more than fifty per cent. But the specific charge against McCoy is that Browning was not

---

tations must be made to the government by another, that he agrees and confederates with the other that the other will make such representations as are needed to permit the scheme to be carried into its ultimate fruition, that then it is not necessary for the government to establish that the defendant was there personally when the representations were made or that he knew * * * that if in making those representations the person making them disclosed the true facts that the nefarious deal that they entered into would not be consummated and the government would not permit the sale of the truck, that the government has sustained its burden."

[4] It is stated in United States v. Uram, 2 Cir., 148 F.2d 187, 190: "Schomer's [one of the defendants] contention that there is no proof of his connection with the alleged crime—that he was present merely when the Campbells signed the applications in blank—has only plausibility for its support. A reading of the record removes any apprehension one might otherwise have as to his guilty participation in the commission of the fraud. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas. 1914A, 614. He was the instigator of the whole transaction, was present at its inception, a real participant therein, and a beneficiary thereof. So the jury

could have well found, and did find from all the evidence." To the same effect is a statement made in United States v. Goldsmith, 2 Cir., 108 F.2d 917, 921: "The further claim is made that merely giving advice cannot be a crime. But the statute prohibits not only the cause of false statements to be made, but also the concealing or covering up of a material fact by a trick, scheme, or device; and the charge is that the trick here was the defendant's. The statute is broad enough to reach the brains behind a scheme, as well as the mere instrument of its execution." In Hamner v. United States, 5 Cir., 134 F.2d 592, the court held that the evidence was insufficient to justify a conclusion beyond a reasonable doubt that Hamner knew the false invoices were to be made or were made, that is, that it was not established that the defendant knew such representations were to be made to a government board. Thus, it was possible that the defendant in the cited case believed that the dealer in tires could get the tires some place where he was not required to make any representations to get them. The case is distinguishable from the instant one because McCoy knew that certain representations must be made to the government before the trucks could be purchased.

[5] See 10 Fed.Reg. p. 12850, § 8307.3-4.

purchasing the trucks or an interest therein for his own small business at all but solely for and at the instigation of the non-veteran McCoy. The finding of guilt necessarily means that the jury did not believe Browning's account of his arrangement with McCoy, but believed that the whole proceeding was a scheme for McCoy, a non-veteran, to enjoy privileges available only to veterans.

The appellant cites cases holding that where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. But we cannot say, as this court said in Karn v. United States, 9 Cir., 158 F.2d 568 (referred to herein under another subhead), that there is no evidence to sustain the verdict nor can we say that as a matter of law the evidence is as consistent with innocence as with guilt. The trial court did not think so. The jury thought the evidence as a whole established the guilt of appellant beyond a reasonable doubt. We hold that the court committed no error as to this subheading.

· Was it error to receive in evidence certain testimony of the witness Lahren?

The court over appellant's objection admitted into evidence the testimony of the veteran, Lahren, as to conversations between Lahren and McCoy in regard to the purchase of war surplus equipment. The conversations admitted into evidence do not relate to the surplus property referred to in the indictment, and for that reason appellant claims its reception was error. Evidence of another offense to be admissible, says appellant, must show prima facie the commission of a completed offense. This argument misses the point. The evidence objected to was introduced to show a course of conduct or general design and plan of McCoy's to circumvent the law through the use of veterans to purchase surplus property for his own purposes. It goes to McCoy's intent and purpose in his relation and actions with Browning. Incidentally it rather clearly shows McCoy's familiarity with the requirements for the purchase of surplus goods by veterans.

██ Since a state of mind is difficult to prove precisely, evidence of surrounding circumstances may be admitted to prove intent. Shreve v. United States, 9 Cir., 103 F.2d 796, 803, and cases cited therein. In United States v. Uram, supra, 148 F.2d at page 189, the court admitted testimony of a 1938 transaction because it was pertinent to the instant charge in that it "* * * bore heavily on his intent in the 1939 [instant] transaction. It proved his 'knowledge' and threw light on his purpose in the 1939 transaction." [6] Evidence was properly admitted as to McCoy's attempt to induce Lahren to do that which later he succeeded in inducing Browning to do. Lahren's testimony as to advice and aid of McCoy and that McCoy made out applications which Lahren later refused to go on with, was properly admitted. No error was committed in regard to this subheading.

Were the instructions fatally defective as to the subject of knowledge and intent?

██ It is argued that appellant was entitled to a proffered specific instruction upon the proposition that he must know what representations were made by Browning and know them to be false before he could be convicted. Of course, knowledge and intent are essential elements of the crime, and the court gave ample instructions on this subject. Throughout the instructions there are repeated statements to the effect that if the nominal purchaser (Browning) had no intention of buying upon his own account but instead was intentionally using his veteran right for the benefit of McCoy, and that McCoy knew

---

6 The rule is stated in a California case, Atkins Corporation v. Tourny, 6 Cal. 2d 206, 215, 57 P.2d 480, 485, which we quote because of its apt language: "Under such circumstances, to strengthen his case, intervener offered evidence of similar transactions of Simons [defendant] at or about the same time, dealing with the same oil stock. This the trial court excluded on the theory that intervener had failed to prove any fraud. The evidence should have been admitted. Cases of fraud are exceptions to the general rule that other offenses of the accused are not relevant to establish the main charge. Where fraud is charged, evidence of other frauds or fraudulent representations of like character, committed by the same parties at or near the same time is admissible to prove intent."

this and schemed, aided and abetted it, that McCoy was guilty as a principal of violating the law.

█ It is next contended that the instructions failed to call to the attention of the jury the necessity for finding beyond a reasonable doubt the presence of a wrongful intent on the part of the veteran Browning at the time the application was filed. The requested instructions state that the intent of the veteran, at the time the representation or statement was made, would be controlling, and that if the veteran honestly believed that he had a right to make the application, he could not knowingly have made false representations to the government; further, that if the veteran acted in good faith, no offense was committed. All of these requirements were plainly and unmistakenly recited in the court's instructions, and, therefore, there was no call upon the trial judge to repeat them by using appellant's text covering the subjects.

█ It is argued that the inference could be drawn from the charge to the jury that no affirmative action on McCoy's part was necessary and that he might be convicted even though he had no active part in making the presentation of the false statement; that under the instructions given, defendant could be convicted even though he did not know that the veteran would make any false statements in his application; and that the jury was not charged that the defendant could be repaid out of the profits accruing from operation of the truck. We do not agree that there was error in not further instructing the jury on these subjects. The theories of the government and appellant in the prosecution and in the defense were fairly and impartially placed before the jury by the instructions.

We perceive no error in the case upon the subjects treated above.

Did the court err in submitting the case to the jury without a specific instruction on the subject of circumstantial evidence?

█ Appellant offered an instruction on the subject of circumstantial evidence, but the court declined to give it and submitted the case without any specific instruction on that subject. Appellant claims that all or practically all of the evidence was of circumstances and for that reason an instruction on the subject of circumstantial evidence should have been given. The government claims that the case is amply supported by direct evidence and for that reason it is not a circumstantial evidence case and that no instruction on the subject was required.

It is said in 20 Am.Jur. p. 258, § 270, that "the basic distinction between direct and circumstantial evidence is that in the former instant witnesses testify directly of their own knowledge as to the main facts to be proved, while in the later case proof is given of facts and circumstances from which the jury may infer other connecting facts which reasonably follow according to the common experience of mankind."

Measured by the above rule there is evidence of both kinds in the case, each of which, in all probability, had considerable weight with the jury. However, even with the aid of such a concise statement, it is not always easy to lay one item of evidence on one side of the distinguishing line and another item on the other side of the line. Much evidence, which, with its recital, would be classed as direct evidence, upon closer observation turns out to be circumstantial in character. Events occur so often in pattern that we accept them as direct evidence of a fact proved, whereas they are only facts which habitually accompany the fact we deem proved. Any rule for the special treatment of evidence upon the basis of its character, direct or circumstantial, is bound to be difficult of correct application. And too, any instruction to a jury directing a different treatment for circumstantial evidence than is to be accorded direct evidence will, if heeded at all, tend to confusion and incite in the juror's mind the too prevalent and persistent illusion that circumstantial evidence is inferior to direct evidence. The giving of any such instruction is very apt to be regarded as in some degree judicially confirming the not uncommon belief that a conviction by the aid of circumstances is highly unreliable and unconscionable. The books are full of judicial discord through

attempts to distinguish between direct and circumstantial evidence in jury instructions.

The second circuit has lead out with definite holdings that all evidence received in a case is to be given such effect as the jury deems it to be entitled. That court refuses to follow courts which have worked out technical and academic distinctions between direct and circumstantial evidence too fine for practical application and so fine as to impel misunderstanding and confusion on the part of the jurors.[7] That the giving of an instruction on circumstantial evidence is not regarded by the United States Supreme Court as one of the essentials to the due process of law is shown in the case of Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343. It is held in that case that it is not error to submit the case without such instruction where none is requested. We do not say that the giving of an instruction on the subject is per se error; we do hold that it was not error to submit the instant case without it.

 When the charge to the jury is read as an integrated whole, as all instructions should be read, it is seen that the court in simple, understandable language defined the essential rights of both government and accused. It understood and realized that the duty of the jury was to listen to everything the court permitted to be presented to it and under certain fundamental rules to apply it to the issue of guilt or innocence. Together with defining the fundamental rules for the consideration of the evidence, the court told the jury: "When two conclusions may be reasonably drawn from the evidence, the one of guilt and the other of innocence, the jury should reject the one of guilt and accept the one of innocence, and in that event should find the defendant not guilty. That is where two conclusions can be drawn as reasonably one way as the other, one pointing to the guilt and one to the innocence, you, of course, must indulge the presumption of innocence and draw the conclusion of innocence."

It is argued that the above instruction makes possible the finding of guilt notwithstanding the probative circumstances may not only be consistent with guilt but

---

[7] In United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229, 234, certiorari denied 279 U.S. 863, 49 S.Ct. 479, 73 L. Ed. 1002, it is said: "The judge declined to charge that circumstantial evidence could sustain a conviction only in case it excluded innocence 'to a moral certainty,' language which perhaps may be necessary in New York. People v. Bennett, 49 N.Y. [137], 139; People v. Fitzgerald, 156 N.Y. 253, 50 N.E. 846; People v. Razezicz, 206 N.Y. 249, 99 N.E. 557. We cannot agree that there are any inexorable formulas on the subject; it is enough that the judge shall in substance tell the jury that they must be satisfied beyond any reasonable chance of mistake. This caution we agree he must give, but to translate such an admonition into a rigid ritual is to forget the actual determinants of a verdict and to mistake shadows for reality." In United States v. Becker, 2 Cir., 62 F.2d 1007, 1010, it is said: "The judge failed to charge the jury as to circumstantial evidence, contenting himself with an entirely neutral statement of the opposed contentions of the parties, though he had been asked to say that such evidence was enough only when it foreclosed the hypothesis of innocence. He had with ample elaboration told them that they must be satisfied beyond fair doubt of the defendant's guilt, and that in our judgment was enough, though some courts have held otherwise. Stutz v. United States, 5 Cir., 47 F.2d 1029; Garst v. United States, 4 Cir., 180 F. 339; Anderson v. United States, 5 Cir., 30 F.2d 485, 487. The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry."

at the same time may not be inconsistent with some hypothesis of innocence. It must not be overlooked in considering this point that all conclusions and all hypothesis which may be found are not to be mere possibilities. They must be reasonable. Henderson v. United States, 9 Cir., 143 F.2d 681, 682. The instruction quoted told the jury that guilt could be found only in case the jury found that the matters proved were consistent with guilt and that no other conclusions could reasonably be drawn from the evidence.

A single circumstance, standing alone, within the realm of the possible, can usually be accounted for upon an innocent basis. But the jury is charged with making all of its conclusions upon the basis of what is reasonable and at every turn under the admonition that the accused is presumed to be innocent and under the necessity of declining to find guilt until the proof convinces beyond a reasonable doubt. The instruction quoted fits all the evidence of facts into an integrated whole, and when this has been done and the jury's verdict is guilt, the jury has found that no other determination could be reasonable. That a hiatus exists here whereby the evidence may reasonably be held not to be inconsistent with some hypothesis of fact other than guilt is faulty reasoning.

Of course, the jury's conclusion must have support in the evidence to the effect that there is no hypothesis determinable from the proof under which the verdict of guilt could reasonably be avoided, but this is not saying that any technical form of instruction need be given. In the very recent case of Karn v. United States, 9 Cir., 158 F.2d 568, this court, at page 570, said: "The prosecution relied entirely upon circumstantial evidence for a conviction. It is sufficient to say that under such circumstances the evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. The evidence should be required to point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt. 23 C.J.S. Criminal Law, § 907, pages 151, 152; Paddock v. United States, 9 Cir., 1935, 79 F.2d 872, 876; Ferris v. United States, 9 Cir.,

1930, 40 F.2d 837, 840. Our considered judgment is that the evidence in this case falls far short of meeting this exacting standard."

In the cited case the court was considering whether the evidence supported the judgment. In the Ferris case, cited therein, the court was considering the same issue and stated the same rule in substance as stated in the Karn case. In the Ferris case the appellate court found that the evidence did not permit of any reasonable hypothesis that would permit of an acquittal, and in the Karn case exactly the opposite was found from a consideration of the evidence. Thus, it is seen that neither of these cases are in conflict with what we have said.

In Gurera v. United States, 8 Cir., 40 F.2d 338, 340, it is said: "There are cases where such form of instruction is proper, but those are cases where the essential facts are proven only by circumstantial evidence, and where such evidence, taken to be true, is as consistent with innocence as with guilt. That is not the situation here. The evidence here shows that, if the jury should believe the facts as detailed by the government, in fact, it may be said if they believe those facts which are undisputed, then there would be no room for more than one construction thereof because they are not consistent with innocence." In Affronti v. United States, 8 Cir., 145 F.2d 3, 9, it is said: "Some of the evidence in this case was circumstantial, such as the evidence of flight. Some was direct and positive. The court might properly have told the jury that some of the evidence was circumstantial, and have included in its instructions the circumstantial evidence rule. Since the evidence of the government was unexplained and uncontradicted, and, if believed, was inconsistent with the innocence of the defendant, we think that the failure of the court to include the circumstantial evidence rule in its instructions was not error. Gurera v. United States, 8 Cir., 40 F.2d 338, 340; Corbett v. United States, 8 Cir., 89 F.2d 124, 128; Stryker v. United States, 10 Cir., 95 F.2d 601, 604." See also Bedell v. United States, 8 Cir., 78 F.2d 358, 368."

Our method of trying those accused of crime is to submit the issue of guilt or innocence to a jury upon the evidence adduced and the applicable law as given it by the court. When the case has been submitted to the jury for decision under the instruction that guilt is only to be found in case the jury regards guilt as the only reasonable determination, the verdict should not be set aside by us unless as a matter of law we should find that there is no adequate support in the evidence for such determination. Otherwise we should be interfering with the jury's function. We cannot find such lack of support in the evidence of our case.

To the extent that the expressions and rulings of this court in Paddock v. United States, 9 Cir., 79 F.2d 872, must be construed as in conflict with our rulings and expressions herein, they may be deemed to be overruled.

Affirmed.